289 So.2d 511 (1974)
Dan Columbus SIMON, Plaintiff-Appellant,
v.
JEFFERSON DAVIS PARISH SCHOOL BOARD, Defendant-Appellee.
No. 4399.
Court of Appeal of Louisiana, Third Circuit.
January 25, 1974.
Rehearing Denied February 25, 1974.
Writ Refused April 19, 1974.
*513 Bell & Williams, by Murphy W. Bell, Baton Rouge, for plaintiff-appellant.
Marcantel & Cassidy, by Bernard N. Marcantel, Jennings, for defendant-appellee.
Before FRUGÉ, MILLER and PONDER, JJ.
PONDER, Judge.
Dan Columbus Simon, plaintiff, filed suit against Jefferson Davis Parish School Board, defendant, for judicial review of his dismissal from his position as teacher at Jennings High School in Jennings, Louisiana. The trial court upheld the action of the school board and affirmed plaintiff's dismissal. Plaintiff has appealed.
The issues in this case are as follows:
(1) Is the statute under which plaintiff was removed constitutional?
(2) Are the findings of the school board supported by substantial evidence?
Plaintiff is a black school teacher with fifteen years teaching experience. By resolution on March 15, 1971, as amended on April 1, 1971, he was charged with seven specific acts of willful neglect of duty. A public hearing was held before the Jefferson Davis Parish School Board on April 14, 1971. A subsequent resolution was adopted on June 3, 1971, finding plaintiff guilty of eight acts of willful neglect of duty. Plaintiff then filed this suit in the district court on September 27, 1971. This matter was not fixed for trial until February 7, 1973, at which time it was submitted upon the evidence previously adduced at the school board hearing. Judgment was subsequently rendered against plaintiff on June 21, 1973.
By argument in brief, plaintiff attempts to raise the issue of constitutionality of Louisiana Revised Statutes 17:443.
A review of the pleadings in this case reveals that plaintiff did not plead unconstitutionality in the district court. The failure to specifically plead unconstitutionality of a statute which is an affirmative defense precludes a litigant from raising this issue in the appellate court. Summerell v. Phillips, 258 La. 587, 247 So.2d 542 (1971); Maher v. City of New Orleans, 256 La. 131, 235 So.2d 402 (1970); Mouton v. Bourque, 253 So.2d 689 (La. App. 3 Cir. 1971). Since this issue was not raised and passed on below, we will not rule on it at the appellate level.
Furthermore, even if this issue was before us, we would nevertheless not pass upon it. Plaintiff's entire argument on this point consists of his statement that "One of the basis (sic) for removal of Mr. Simon was predicated upon the inherent defectthe patent unconstitutionalityof R.S. 17:443 as it existed in 1971." At that time the statute read, in part, as follows:
"A permanent teacher shall not be removed from office except upon written and signed charges of wilful neglect of duty, or incompetency or dishonesty, or of being a member of or of contributing *514 to any group, organization, movement or corporation that is by law or injunction prohibited from operating in the state of Louisiana, [or of advocating or in any manner performing any act toward bringing about integration of the races within the public school system or any public institution of higher learning of the state of Louisiana,] and then only if found guilty after a hearing by the school board of the parish or city, as the case may be, which hearing may be private or public, at the option of the teacher." (Brackets ours).
The supposed defective basis was that portion of the statute noted in brackets above. However, there is not one scintilla of evidence to show that plaintiff was dismissed for advocating integration. In fact, all the evidence, including the formal charges, shows that the dismissal was based solely upon willful neglect. Consequently, we would not pass upon a provision which had no connection whatsoever with the proceedings against plaintiff. See Smith v. Concordia Parish School Board, 331 F. Supp. 330 (W.D.La.1971).
Plaintiff maintains that the evidence did not support the findings of the school board which were affirmed by the trial court. We will review separately each of the findings and the evidence surrounding it.
The first finding of neglect on the part of plaintiff states that he failed to use properly his unencumbered period when he was absent from the campus without permission on February 15, 16, 17 and 18, 1971, for periods of about fifty-five minutes each.
It seems that each teacher in this school was given an "unencumbered period" or "opportunity period" during each day. The defendant maintains that this period was to be used for school related purposes, such as preparation for classes. Defendant does, however, admit that in case of an emergency, a teacher was allowed to use this period for other purposes.
Plaintiff states that he was not aware of the regulation regarding the use of the unencumbered period, and that on the days he left the campus he did so to obtain medication, an emergency in his opinion.
Plaintiff presented evidence that he suffers from diabetes, an ulcer and a spastic colon, and that on several occasions prior to leaving the campus, plaintiff went to the school office and informed one or more of the assistant principals of his intention.
We will not venture to say whether or not plaintiff's need for medication or to have prescriptions filled were emergencies within the exception of the school board for normal use of that period. However, we nonetheless conclude that plaintiff was not guilty in these cases of wrongdoing which amounted to a willful neglect of duty. The ambiguity of the circumstances involving the statements of intention to leave and the absence of objections thereto might very well lead Mr. Simon to believe that he had permission. Assistant principal Louie A. Moore testified that plaintiff also asked him for permission before leaving, saying that he asked plaintiff if there was an emergency, and was answered that the emergency was his physical disability. Mr. Moore also says that around February 23, 1971, he told plaintiff that the unencumbered period was to be used for planning purposes, and that after that Mr. Simon did not leave the campus again to his knowledge.
The second finding of neglect of duty states that plaintiff failed to be in his classroom by 8:00 A.M. on September 16, October 14, 15, 19, 20, 21, 1970, and March 3, 1971, in violation of the rules promulgated in the teacher's handbook. These are all the days noted in the charges against plaintiff. He was allegedly five to ten minutes late on these days.
In answer to interrogatories propounded by plaintiff, defendant stated that detailed reports are kept on all teachers, and that all teachers were required to sign in and note the time they came in each day. *515 Plaintiff admitted that if the sign-in sheet showed that he was tardy, then such was correct. However, neither the reports kept on plaintiff nor the sign-in sheets, both of which were presumably in defendant's possession, were entered into evidence.
The only evidence which supports this charge is the testimony of the principal, Mr. Joseph Harelson, that he personally saw him check in late on one of these dates.
In contrast, we have the testimony of assistant principal Ward that he never personally saw plaintiff come in late and that "We never bothered with it too much. Teachers would sign in before going to class."
We conclude that the evidence is to the effect that plaintiff was late on various occasions but that this violation was constantly ignored and of minor importance.
The third finding of neglect is that, "Mr. Simon wilfully left his sixth hour period unattended on or about February 18, 1971, which resulted in a disturbance between blacks and whites in the room. Three white boys were chased from the room and assistant principal Moore was required to go into the room to restore order. There were at least two such incidents during the week February 15, through 19, 1971." We feel that the evidence does support a finding, and in fact, plaintiff admits that he left his room for about fifteen minutes on February 18, 1971. The record also reveals that there was some sort of disturbance in the room. That this was not a single isolated instance was shown by evidence of at least one and possibly two other instances.
Plaintiff was found guilty of neglect of duty as a result of making statements concerning sex activities between black and white races during his World History Class.
While the findings do not specify the statements, reference to the charges reveal that the statements allegedly made were as follows:
"A. Integration in churches and classrooms came recently, but in bed for a long time because if a white man wanted a little loving he would go across the tracks.
"B. The black man has had the idea that only white women could love adequately because of picture shows. Until recently there were no black women in movies.
"C. Black girls have more illegitimate children because they can't afford to have anything done as white girls do.
"D. Obscenity and vulgarity are needed to motivate people."
The testimony of three of the students enrolled in this class amply supports this charge. Consequently, we find that there is substantial evidence to conclude that these statements were made.
The fifth finding of neglect on the part of plaintiff was that he frequently used vulgarity and profanity in his classes, and repeatedly used threats of physical violence against his students.
We will not pass on the sufficiency of evidence to support these findings since a review of the allegations against plaintiff reveals that these acts were not included in the charges. Since plaintiff was not notified that he was being charged with these acts of neglect, the school board was without authority to find him guilty in these respects. To hold otherwise would be a deprivation of due process. Johns v. Jefferson Davis Parish School Board, 154 So.2d 581 (La.App. 3 Cir. 1963).
Finding six was that plaintiff "neglected his duty by assuming the rule of supervisor during his unencumbered period on March 8, 9 and 10, 1971," when "he walked the halls and made notes in a black book" which "caused a morale problem because such conduct violates professional ethics."
Plaintiff was specifically charged with walking down the halls on March 1 and 2, and on March 8, 9 and 10, 1971. The *516 school board found him guilty of such for the days March 8, 9 and 10, based probably on the notes in D-3, purportedly made on these days, containing observations made by Mr. Simon. Mr. Harelson testified that plaintiff walked the halls on March 1 and 2. In addition, Mrs. Keeth and Mrs. Sarradet, two teachers, stated that they saw plaintiff in the hall on March 2. Assistant principal Moore testified that several other teachers complained about the plaintiff observing their classes, but none of these testified to such before the school board.
Plaintiff admits that he made notes in a black book, but only Mrs. Keeth could say that she was upset by this.
We feel that the evidence supports a finding that plaintiff walked down the halls of Jennings High School on two occasions, and made notes in a black book, thereby causing at least one teacher to become upset and some complaints by others.
The school board found that plaintiff failed to provide lesson plans and his roll book to substitute teachers when he was absent on September 28, 29 and 30, October 8, 9, 22 and 23, November 2 and 3, and December 17 and 18, 1970, and January 18, 1971.
This finding is supported by the testimony of Mr. Harelson, the principal. In addition, plaintiff at least impliedly admitted his failure to provide those materials. Accordingly we conclude that this finding is supported by the evidence.
The last finding of neglect was that plaintiff refused to accept constructive criticism from the principal and assistant principals as evidenced by his statement at a September 17, 1970, conference that the school administrative personnel were not capable of observing his class. The school board further found that the plaintiff thereby cut off all effective avenues of communication between him and the administration.
The evidence reveals that on September 17, 1970, a conference was held for the purpose of reviewing some of plaintiff's teaching techniques. During that meeting, plaintiff stated that he did not feel that the school's administrative personnel were capable of supervising his class, and that he had certain principles that he would not change for anyone.
While this supports the finding that he refused to accept constructive criticism and hampered communication, the conclusion that plaintiff thereby cut off all avenues of communication is at least an overstatement. The testimony of all three of the supervisory personnel was that the results of a later conference were different, causing them to believe that they were overcoming the total inability to communicate. However, informal efforts by Mr. Harelson to discuss Mr. Simon's activities with him were rebuffed.
In sum, we conclude that the evidence as a whole supports the following determinations:
1. Plaintiff left his classroom unattended on February 18, 1971, for approximately fifteen minutes. A disturbance occurred while he was gone. This was not an isolated instance.
2. Plaintiff made the following statements to his class:
"A. Integration in churches and classrooms came recently, but in bed for a long time because if a white man wanted a little loving he would go across the tracks.
"B. The black man has had the idea that only white women could love adequately because of picture shows. Until recently there were no black women in movies.
"C. Black girls have more illegitimate children because they can't afford to have anything done as white girls do.
"D. Obscenity and vulgarity are needed to motivate people."
3. Plaintiff walked down the halls on several occasions, and made notes in a *517 small black book. At least one teacher became upset by this.
4. Plaintiff failed to provide lesson plans and his roll book to substitute teachers when he was absent on September 28, 29 and 30, October 8, 9, 22 and 23, November 23 and December 17 and 18, 1970, and January 18, 1971.
5. Plaintiff refused to accept constructive criticism from the principal and assistant principals on September 17, 1970.
Plaintiff contends that he was not informed of any school regulations prohibiting his wrongful acts and that he was entitled to a specific warning and an opportunity to correct his mistakes.
We note first that there was a school regulation, promulgated by the principal at the first faculty meeting, that a teacher who was going to be absent should leave his roll book and a lesson plan for the substitute. Accordingly, plaintiff cannot complain of lack of notice with regard to this finding.
As to the remaining findings, the appropriateness of certain actions is oftentimes dictated by the nature of the position held by an individual. More specifically, a classroom teacher, merely by the nature of that position, should be aware of the impropriety of some practices. Keefe v. Geanakos, 418 F.2d 359 (1 Cir. 1969). We believe that the findings noted above are examples of acts which need no regulation to define their indecorum.
Plaintiff contends that the statements made by him to his class are protected by his constitutional right of free speech, and by the right of academic freedom enjoyed by public school teachers.
While the First Amendment rights in the schools are of great importance, Presidents Council, District 25 v. Community School Board No. 25, 409 U.S. 998, 93 S.Ct. 308, 34 L.Ed.2d 260 (1972); Keyishian v. Board of Regents of U. of St. of N. Y., 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967), the right of free speech is not absolute, but is limited by state regulatory control that is not unreasonable or irrational. See Epperson v. Arkansas, 393 U. S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968); Tinker v. DesMoines Independent Com. School Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969).
The interrelationship of these principles has resulted in the requirement that there must be some serious educational purpose underlying the use of a phrase or word for it to be protected under the auspices of academic freedom. Mailloux v. Kiley, 323 F.Supp. 1387 (D.C.Mass.1971); Keefe v. Geanakos, supra; Celestine v. Lafayette Parish School Board, 284 So.2d 650 (La.App. 3 Cir. 1973).
We conclude that the first and second noted statements made by plaintiff clearly served no serious educational purpose, and are therefore not entitled to protection. Moreover, without more connexity and relevancy than has been shown it is impossible for us to state that the school board and the lower court erred in finding that there was no legal protection for the other statements.
Plaintiff next maintains that the school board acted arbitrarily and unreasonable in finding that his actions constituted a willful neglect of duty.
It is a basic premise of our law that when there is a rational basis for an administrative board's discretionary determinations which are supported by substantial evidence insofar as factually required, the court has no right to substitute its judgment for the administrative board's or to interfere with the latter's bona fide exercise of its discretion. Lewing v. DeSoto Parish School Board, 238 La. 43, 113 So.2d 462 (1959); State ex rel. Rathe v. Jefferson Parish School Board, 206 La. 317, 19 So.2d 153 (1943); Celestine v. Lafayette Parish School Board, supra. With this in mind, we conclude that the above conclusions were based upon substantial evidence.
While these represent a reduction in the findings of the defendant school board on which the dismissal was based, nevertheless, *518 we still conclude there is a rational basis for the school board's discretionary determinations. Lewing v. DeSoto Parish School Board, supra. We cannot say that the school board and the lower court have abused their discretion since they had substantial evidence upon which to base their decisions and we therefore cannot substitute our opinion for theirs. Frank v. St. Landry Parish School Board, 225 So.2d 62 (La.App. 3 Cir. 1969).
The remedy granted in Johns v. Jefferson Davis Parish School Board, supra, that is, the remand of the case for reconsideration, we believe to be inappropriate here. There the charges remaining were so insubstantial as to raise considerable doubt as to the appropriateness of the penalty. Furthermore, the charges proved were concerned with appellant's competency as a principal of a school and not as a classroom teacher, and the court remanded for further consideration on that point.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs are assessed against the appellant.
Affirmed.