457 So.2d 184 (1984)
Bereniece V. CUNNINGHAM, Plaintiff-Appellee,
v.
FRANKLIN PARISH SCHOOL BOARD, et al., Defendants-Appellants.
No. 16485-CA.
Court of Appeal of Louisiana, Second Circuit.
September 26, 1984.
Rehearing Denied October 26, 1984.
Writ Denied December 7, 1984.
*185 John Barkley Knight, Jr., Winnsboro, Cotton, Bolton & Hoychick by Glen Roberts, Rayville, for defendants-appellants.
Jones & Jones Law Offices by Benjamin Jones, Monroe, for plaintiff-appellee.
Before PRICE, JASPER E. JONES and FRED W. JONES, Jr., JJ.
JASPER E. JONES, Judge.
This is a tenured teacher termination case. The Franklin Parish School Board appeals a district court judgment ordering it to reinstate plaintiff as a teacher in the parish school system with back pay from the date of her dismissal. We reverse.
The plaintiff, Bereniece V. Cunningham, was a Franklin Parish permanent teacher with approximately 30 years of service. See LSA-R.S. 17:442. She could only be terminated for one of the reasons and in accordance with the procedure set forth in LSA-R.S. 17:443 which provides:
§ 443. Removal of teachers; procedure; right to appeal
A. A permanent teacher shall not be removed from office except upon written and signed charges of willful neglect of duty, or incompetency or dishonesty, or of being a member of or contributing to any group, organization, movement or corporation that is by law or injunction prohibited from operating in the state of Louisiana, and then only if found guilty after a hearing by the school board of the parish or city, as the case may be, which hearing may be private or public, at the option of the teacher. At least twenty days in advance of the date of the hearing, the superintendent with approval of the school board shall furnish the teacher with a copy of the written charges. Such statement of charges shall include a complete and detailed list of the specific reasons for such charges and shall include but not be limited to the following: date and place of alleged offense or offenses, names of individuals involved in or witnessing such offense or offenses, names of witnesses called or to be called to testify against the teacher at said hearing, and whether or not any such charges previously have been brought against the teacher. The teacher shall have the right to appear before the board with witnesses in his behalf and with counsel of his selection, all of whom shall be heard by the board at said hearing. For the purpose of conducting hearings hereunder the board shall have the power to issue subpoenas to compel the attendance of all witnesses on behalf of the teacher. Nothing herein contained shall impair the right of appeal to a court of competent jurisdiction.
B. If a permanent teacher is found guilty by a school board, after due and legal hearing as provided herein, on charges of willful neglect of duty, or of incompetency, or dishonesty, or of being a member of or contributing to any group, organization, movement or corporation that is by law or injunction prohibited from operating in the state of Louisiana, and ordered removed from office, or disciplined by the board, the superintendent with approval of the board shall furnish to the teacher a written statement of recommendation of removal or discipline, which shall include but not be limited to the exact reason(s), offense(s) or instance(s) upon which the recommendation is based. Such teacher may, not more than one year from the date of the said finding, petition a court of competent jurisdiction for a full hearing to *186 review the action of the school board, and the court shall have jurisdiction to affirm or reverse the action of the school board in the matter. If the finding of the school board is reversed by the court and the teacher is ordered reinstated and restored to duty, the teacher shall be entitled to full pay for any loss of time or salary he or she may have sustained by reason of the action of the said school board.
On May 18, 1982 the superintendent of schools for Franklin Parish, Royce Bryan, sent a letter notifying plaintiff that she had been charged with willful neglect of duty and that a hearing on the charges would be held before the school board on June 18, 1982. Attached to the letter was a formal statement of charges citing three instances of neglect of duty. The statement of charges contains all the information required by 17:443 A except for a statement as to whether any charges had been previously brought against plaintiff.
Plaintiff requested a public hearing at which she was represented by counsel. At the beginning of the hearing the parties, through their respective attorneys, stipulated that no evidence of any prior acts of misconduct by plaintiff, not contained in the statement of charges, would be admitted. No such evidence was admitted. Plaintiff's attorney objected to the noted deficiency in the statement of charges.
At the close of the hearing the school board found plaintiff guilty on two of the three charges and voted to dismiss her. Superintendent Bryan sent plaintiff a letter dated June 22, 1981 informing her of the board's findings and action. Plaintiff sought judicial review of the board's decision with the Fifth Judicial District Court. The matter was submitted to the court on the transcript of the board hearing with exhibits. No additional evidence was taken. The district judge ordered plaintiff reinstated with back pay after finding that she was denied due process in the proceedings before the school board because the statement of charges does not indicate whether previous charges had ever been brought against her.
The issues raised by the school board's appeal are:
(1) Whether the failure to include a statement as to whether previous charges had been brought against plaintiff in the statement of charges rendered the board's action in firing her invalid; and
(2) If not, whether there is a rational basis for the board's decision to terminate plaintiff supported by substantial evidence.
Issue # 1
In addition to listing the grounds for which a tenured teacher may be removed from office, R.S. 17:443 A sets out the procedure which must be taken by a school board to terminate such a teacher and the information which must be relayed to the teacher in the statement of charges she receives. The jurisprudence requires the school board to strictly adhere to the procedure in the statute in order for a termination to be valid. See Jackson v. St. Landry Parish School System, 407 So.2d 51 (La.App. 3d Cir.1981); Tate v. Livingston Parish School Bd., 391 So.2d 1240 (La.App. 1st Cir.1980); McCoy v. Tangipahoa Parish School Board, 308 So.2d 382 (La.App. 1st Cir.1975).
We are here concerned with the contents of the statement of charges. That particular provision was added to 17:443 A by Act 631 of 1980 and was a codification of the jurisprudence which required specificity in the charges against the tenured teacher. State Ex Rel. Franceski v. Plaquemines Parish, 416 So.2d 150 (La.App. 4th Cir. 1982).
The requirement that the statement of charges contain certain information is designed to insure that the teacher is afforded due process in the proceedings against her. The inclusion of this information enables the teacher to know exactly what alleged facts form the basis of the proceedings against her in order that she can prepare her defense accordingly. See *187 Johns v. Jefferson Davis Parish School Board, 154 So.2d 581 (La.App. 3rd Cir. 1963). If the school board intends to present evidence that previous charges have been filed against the teacher and this information is not relayed to the teacher, she would be at a disadvantage in preparing her defense. If, however, the school board does not intend to present such evidence, the teacher is not prejudiced by the failure to include an indication as to whether previous charges have been filed. We conclude that if the teacher is otherwise afforded due process, the mere failure of the statement of charges to include an indication of whether previous charges have been filed does not render the school board's decision to terminate a teacher invalid in the absence of prejudice to the teacher.
We find no due process violation. All of plaintiff's constitutional rights were fully protected. See Jennings v. Caddo Parish School Board, 276 So.2d 386 (La. App. 2d Cir.1973). She was advised in writing more than 20 days before the hearing of the specific charges against her. She was represented by counsel of her choosing at a public hearing she requested. She was allowed to cross-examine the witnesses against her and present witnesses and evidence in her own behalf and she exercised her right to judicial review. Furthermore, the school board stipulated at the commencement of the hearing that no evidence would be presented of any wrongdoing on plaintiff's part which was not included in the statement of charges and no such evidence was presented. There was no attempt by the board to establish there had been any prior charges filed against the plaintiff and the record contains no indication there had ever been any prior charges filed. The proceedings against plaintiff were fundamentally fair and the district judge erred in ruling to the contrary.
Since no evidence of any prior charges or acts of wrongdoing was admitted, plaintiff was not prejudiced by the deficiency in the statement of charges. The school board reached its decision solely on the evidence presented at the open hearing in support of specific charges contained in the written notice given the plaintiff. See Moffett v. Calcasieu Parish School Board, 179 So.2d 537 (La.App. 3d Cir.1965). See also Simon v. Jefferson Davis Parish School Board, 289 So.2d 511 (La.App. 3rd Cir.1974); Johns v. Jefferson Davis Parish School Board, supra.
Issue # 2
The standard of judicial review of a school board action is to determine whether there is a rational basis for the board's determination supported by substantial evidence. In such cases, the reviewing court must neither substitute its judgment for the judgment of the school board nor interfere with the board's bona fide exercise of discretion. Howell v. Winn Parish School Board, 332 So.2d 822 (La.1976); Moffett v. Calcasieu Parish School Board, supra; Lewing v. DeSoto Parish School Board, 238 La. 43, 113 So.2d 462 (1959); Jennings v. Caddo Parish School Board, supra.
The two charges of willful neglect of duty plaintiff was found guilty on are:
1. On April 15, 1982, Bereniece V. Cunningham did lock three pre-school handicapped students in her room, leaving them unattended, while she was handling chores not related to the teaching of her class. The students locked in the classroom, unattended, were 4 and 5 years of age ...
2. On April 29, 1982, Bereniece V. Cunningham did leave Winnsboro Lower Elementary School to have a form signed at Winnsboro Junior High School. She signed out at 7:48 A.M., and was expected to return prior to the commencement of her classes. She went to Winnsboro High School; checked out a student for a medical examination for purposes not related to school; and did not return to Winnsboro Lower Elementary until 10:43 A.M., well after her classes should begin. She is charged with missing her classes without permission and without a substitute, and with concealing her intentions in seeking permission to leave campus...
*188 The evidence substantially supports the charges. Plaintiff argues: (1) her conduct was not reprehensible enough in either instance to warrant her dismissal; and (2) her termination was contrary to law because she did not receive prior warning that her conduct in either instance was contrary to school policy.
Plaintiff's explanation for the April 15 incident was that she left the children locked in her classroom in order to return a lost handicapped child to the child's class. She contends she locked the door because the so-called "normal" children at the school occasionally "meddle with" (harass) the handicapped children. She further states she took steps to insure that the classroom was safe before she left and that the trip to the lost child's classroom only necessitated her being gone a few minutes.[1]
We find this incident to be a most serious breach of plaintiff's duty to make every effort to assure the safety of the children entrusted to her care. While plaintiff may have felt she had a justifiable reason for leaving the room, she exercised extremely poor judgment in locking three pre-school handicapped children in a classroom unattended. One of the children was blind and the other two had speech impediments. If a sudden emergency had arisen it is doubtful that these children would have been able to fend for themselves or call for help. The fact that nothing happened to the children does not excuse plaintiff's conduct.
Plaintiff's explanation for the April 29 incident was that she took the student for a medical examination so he could participate in Special Olympics. She contends the assistant principal of her school, Leo Thornhill, knew her purpose for leaving school. The record does not support plaintiff's argument that Thornhill knew her purpose. Thornhill testified:
I'd like to clarify the permission giving. She came in the office at 7:48, asked could she sign out to the Junior High. I asked her would she be back in time for her first student. She assured me she would. And ah ... I think at 8:20 she hadn't arrived back. I gave her permission to go to the Junior High and to get a permission slip signed to go on a trip they were taking. She said she would be back in time to meet her first student, cause I specifically asked her that.
This testimony establishes that Thornhill gave plaintiff no permission to go to the high school and take a student for a Special Olympics physical examination and had no knowledge that she intended to do this or be absent from her first two classes.[2]
Plaintiff has a great interest in Special Olympics and devotes much time and energy to the program. Special Olympics is an outstanding program and the athletes and their supporters who give so much of themselves to make the program possible deserve the highest commendation. However, Special Olympics is not an officially sponsored school activity and plaintiff's work in the program is not part of her teaching duties. A school system could not operate efficiently if its teachers were permitted to miss their classes without permission and without making arrangements for a substitute in order to take care of personal business, however worthy it may be.
Plaintiff argues that a teacher must receive prior warning that she must not commit an act before the conduct can serve as a basis for termination. She cites as authority for her argument the case of Lewing v. DeSoto Parish School Board, supra. The holding in Lewing concerning prior warning is limited to the facts of the case. *189 We find that the correct statement of law on the warning issue is contained in Simon v. Jefferson Davis Parish School Board, supra, wherein the court recognized that a warning is not required when the teacher should know her conduct is improper. There the court stated, "a classroom teacher, merely by the nature of that position, should be aware of the impropriety of some practices."
We further find that plaintiff was either warned or otherwise knew her conduct was contrary to school policy. While defending herself on a charge that she did not show up at her duty station during recess one day, plaintiff testified that the reason for her absence was that some of her students had not been picked up by their regular teacher[3] and she could not leave the students to go to her duty station because she knew that students were not to be left unattended.[4] Plaintiff also testified that a conflict had developed within the school system over her work with Special Olympics and that Superintendent Bryan had issued instructions to her school's principal that plaintiff would no longer be allowed to perform functions related to Special Olympics during school hours. (See footnote 2, supra) Plaintiff further indicated that when she checked the student out of school to take him to the doctor's office she knew she was doing wrong.
The evidence establishes that the plaintiff intentionally violated school policy of which she was well aware and was therefore guilty of willful neglect of her duty. The school rules plaintiff violated were reasonable and necessary for the proper operation of the school.
We find that there was a rational basis for the board's action supported by substantial evidence.
The judgment of the trial court is REVERSED and the action of the appellant school board terminating the plaintiff is reinstated. All costs are assessed against the plaintiff.
NOTES
[1] The child's classroom was in another building on campus. Various estimates placed that room at a 2-5 minute walk from plaintiff's room in which she locked the three children.
[2] If Thornhill had known plaintiff's purpose for leaving it is doubtful he would have given permission. Plaintiff testified that at some point prior to this incident she asked Thornhill if she could leave school to run an errand for Special Olympics. Thornhill asked the school's principal, Arthur Rhodes, if it was okay for plaintiff to run the errand. Rhodes informed Thornhill, in plaintiff's presence, that she was no longer allowed to leave campus for purposes related to Special Olympics during school hours.
[3] Plaintiff taught an adapted physical education class for handicapped students. In most cases the students' regular teacher brought them to plaintiff's room when it was time for their P.E. class and returned for them at the conclusion of the class.
[4] This particular incident was one of the grounds for charge 3 on which plaintiff was exonerated. Charge 3 generally alleged that plaintiff had been lax in the performance of her duties by being late or not performing certain duties at all. Several specific incidents were alleged to support the charge.