814 So.2d 699 (2002)
Sonja WISE, Plaintiff-Appellant,
v.
BOSSIER PARISH SCHOOL BOARD, Defendant-Appellee.
No. 35,543-CA.
Court of Appeal of Louisiana, Second Circuit.
April 3, 2002.
Rehearing Denied May 2, 2002.
*700 Rittenberg and Samuel, by Jay Alan Ginsberg, Charles Mayer Samuel, III, Counsel for Appellant.
*701 Hammonds & Sills, by Robert L. Hammonds, Roland V. McKneely, Jr., Counsel for Appellee.
Before NORRIS, STEWART and PEATROSS, JJ.
STEWART, Judge.
The plaintiff, Sonja Wise, was dismissed as a tenured classroom teacher for willful neglect of duty by the Bossier Parish School Board ("BPSB") in accordance with La. R.S. 17:441, et seq. Wise petitioned the district court for review of BPSB's decision. The district court upheld BPSB's dismissal of Wise. Wise now appeals, asserting that the district court erred in failing to find that BPSB acted arbitrarily and had no rational basis to terminate her for willful neglect of duty based on the evidence presented. Upon finding that the charges of willful neglect of duty were not supported by substantial evidence, we reverse the judgment of the district court and the ruling of BPSB, and order reinstatement of Wise to her former position as a teacher with BPSB.

FACTS
Sonja Wise was a tenured teacher who had been employed by BPSB for sixteen years. During the 1992-1993 school year, Wise was assigned to Cope Middle School ("Cope") as a teacher of various history and language arts classes for the sixth, seventh, and eighth grades. In November 1992, Wise was placed on paid leave pending resolution of a recommendation by Wayne Tinsley, BPSB's Director of Personnel, that she be dismissed as a classroom teacher for willful neglect of duty. W.T. Lewis, BPSB's Superintendent of Education, notified Wise of the seven formal charges, A through G, against her in a letter dated May 20, 1994. Of the seven charges of willful neglect of duty, the school board determined that Wise demonstrated willful neglect of duty as to charges A, B, C, E, F and G, which are summarized as follows:
A. On September 22, 1992, after being instructed on school procedure the previous day, Wise referred six students to the office at four separate times in violation of school policy and procedure. The principal, Tim Gilbert, met with Wise and issued a warning or reprimand (WOR-1) citing her for insubordination due to the violation of the referral procedure, her disregard for specific instructions pertaining to student referrals, and her failure to provide supervision to all students in her care. Wise refused to sign the WOR-1 after two requests by Gilbert.
B. On September 28, 1992, Wise was observed by Kenneth M. Kruithof, the supervisor of instruction for fourth through eighth grades, who completed a teacher observation form. The charge alleges that Kruithof found that Wise did not do the following:
1. Utilize appropriate lesson design.
2. Use motivational strategies as needed.
3. Adjust instruction as needed.
4. Provide learning activities for developing thinking skills.
5. Use acceptable methods of discipline with consistency.
6. Make optimum use of time.
7. Provide extension activities as needed.
8. Maintain routine classroom procedures.
9. Provide a classroom environment to stimulate learning.
10. Exhibit respect and concern for all students.
11. Relate or interact with students in fair and positive manner.

*702 12. Assist students to develop positive self-concept and respect for others.
At a conference with Wise following his observation, Kruithof gave Wise suggestions for improving the areas of concern, but there was no evidence that Wise made sincere efforts to correct the deficiencies. Wise refused to sign the observation form.
C. On October 1, 1992, Gilbert conducted his own observation of Wise and found that she did not do the following:
1. Write plans to include student objectives, procedures, materials, and other appropriate components.
2. Follow state/local guidelines in planning and instruction.
3. Utilize appropriate lesson design.
4. Use motivational strategies as needed.
5. Strive for pupil achievement commensurate with ability.
6. Adjust instruction as needed.
7. Use varied teaching approaches and activities.
8. Promote student participation and interaction.
9. Make optimum use of time.
10. Provide extension activities as needed.
11. Maintain routine classroom procedures.
12. Exhibit respect and concern for all students.
13. Relate or interact with students in fair and positive manner.
14. Promote desire for independent student effort.
Gilbert conducted a conference with Wise following his observation. She refused to sign the observation form. There was no evidence of sincere efforts being made to correct the deficiencies.
E. On October 5, 1992, Wise again sent students to the office without supervision and without following the discipline procedures. Gilbert gave Wise a second WOR-1. The charge stated that Wise sent the student to the office despite being told over the intercom that someone would come to her room. Gilbert met with Wise in a conference regarding the reprimand, which Wise signed. Wise's response was apologetic. She explained that she thought the school secretary said to send the student to the office.
F. On October 29, 1992, Wise received an unsatisfactory evaluation from Gilbert, who found that she failed in the following areas:
1. Not having written plans which include student objectives, procedures, materials, etc.
2. Not following state/local guidelines in planning/instruction.
3. Not utilizing appropriate lesson design.
4. Not using motivational strategies as needed.
5. Not striving for pupil achievement commensurate with ability.
6. Not demonstrating knowledge of subject matter.
7. Not moving about classroom monitoring student progress.
8. Not adjusting instruction as needed.
9. Not using varied teaching approaches and activities.
10. Not promoting student participation and interaction.
11. Not providing learning activities for developing thinking skills.

*703 12. Not evaluating student achievement using appropriate techniques and tools.
13. Not consistently using acceptable methods of discipline.
14. Not making optimum use of time.
15. Not providing extension activities as needed.
16. Not maintaining routine classroom procedures.
17. Not providing classroom environment to stimulate learning.
18. Not using effective voice control.
19. Not projecting well-groomed appearance.
20. Not exhibiting respect and concern for all students.
21. Not relating and interacting with students in fair and positive manner.
22. Not promoting desire for independent student effort.
23. Not assisting students to develop positive self-concept and respect for others.
24. Not being prompt and dependable.
25. Not communicating effectively with students, staff, parents, and community.
26. Not insuring proper care of textbooks, teaching aids, and equipment.
27. Not participating in activities to improve professional competence.
28. Not supporting school programs and displaying positive attitude.
29. Not completing reports and records as assigned.
At a conference following the evaluation, Wise refused to sign the evaluation form.
G. On November 4, 1992, following completion of a second Professional Assistance Schedule, Gilbert determined that there was no evidence of sincere efforts by Wise to implement the recommended activities, even though she had expressed concern for the successful completion of the plan. There was no improvement in her classroom management skills or quality of instruction. The charge stated that Wise made "very little effort" to address specific activities of the plan as evidenced by her failure to turn in lesson plans and seating charts to Gilbert in a timely manner; her unsatisfactory performance in utilizing a seating chart to monitor students' behavior; and her sporadic attempts to utilize specific items of classroom routines from the Wong book. This charge further alleged that Wise refused to sign the November 4, 1992 Professional Assistance Schedule.
The letter of May 4, 1994, further advised Wise of her rights regarding the hearing before the school board and the witnesses who might be called to testify against her. The letter concluded with the superintendent's recommendation that she be dismissed as a tenured teacher and her employment with BPSB be terminated if the school board finds the charges supported by substantial evidence.
A tenure hearing on the charges against Wise was conducted on August 2, 1994. Wise was represented by counsel. Witnesses called to testify against Wise included Tim Gilbert; Ken Kruithof; William Allred, the assistant principal of Cope; and Marta Hernandez, a teacher at Cope. Wise testified on her own behalf. At the close of the hearing, the school board found Wise guilty of willful neglect of duty as to six of the seven charges. She was not found guilty as to Charge D pertaining to the first professional assistance plan because that charge was dismissed *704 and no vote was taken. The board members voted unanimously to dismiss Wise as a teacher.
On July 11, 1995, as provided in La. R.S. 17:443(B), Wise petitioned the district court for a hearing to review her dismissal by BPSB. Pursuant to a motion in limine filed by BPSB and granted by the district court, Wise was prohibited from presenting evidence not previously submitted at the tenure hearing. Affirming BPSB's decision to dismiss Wise as a classroom teacher, the district court found that BPSB had complied with all procedural requirements in taking action against Wise. Upon review of the hearing transcript, the district court found that Wise had sent students to the office on more than one occasion in violation of school policy, that she received negative evaluations, that she failed to properly implement the professional assistance plans, and that she was given opportunities to correct her teaching inadequacies but failed to take advantage of such opportunities.
Wise, after obtaining new counsel, filed the instant appeal, which was followed by motions to remand by both Wise and BPSB for the purpose of supplementing the record with exhibits introduced into evidence at the tenure hearing before the school board. By order of September 20, 2001, this court directed the district court to conduct a hearing to determine what, if any, evidence needed to be supplemented into the appellate record. In a minute entry dated October 11, 2001, the district court stated that no evidence other than the transcript was filed into the record or considered on review. Thereafter, Wise filed a motion to remand the matter to the district court to identify the missing exhibits, make them part of the record, and render a new decision based on the transcript and exhibits introduced before the school board. By order of November 8, 2001, this court denied the motion to remand and referred the issues raised by the motion for consideration on appeal.
This appeal panel addressed the matter of the missing exhibits after oral arguments by ordering BPSB, the presumptive custodian of the exhibits submitted as evidence for its consideration at the tenure hearing, to produce all documentation or exhibits introduced into evidence at the tenure hearing. BPSB complied with this order. Accordingly, a complete record of the tenure hearing proceedings exists for review before this court. The principal issue to be addressed is whether BPSB's decision to dismiss Wise as a classroom teacher is based on substantial evidence and is not arbitrary or an abuse of discretion.

DISCUSSION

Applicable Law
A tenured teacher has a constitutionally protected interest in continued employment. Franceski v. Plaquemines Parish Sch. Bd., 772 F.2d 197 (5th Cir.1985), citing Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); Gaulden v. Lincoln Parish Sch. Bd., 554 So.2d 152, 155 (La.App. 2d Cir.1989), writ denied, 559 So.2d 126 (La.1990). The Louisiana Teachers' Tenure Act is designed to protect the job security of teachers, and the statute should be liberally construed in favor of its primary beneficiaries, tenured employees. Howell v. Winn Parish Sch. Bd., 332 So.2d 822, 827 (La.1976); Lewing v. DeSoto Parish Sch. Bd., 238 La. 43, 113 So.2d 462 (La.1959).
La. R.S. 17:443(A) provides in relevant part as follows:
A. A permanent teacher shall not be removed from office except upon written and signed charges of willful neglect of duty, or incompetency or dishonesty, or *705 of being a member of or contributing to any group, organization, movement or corporation that is by law or injunction prohibited from operating in the state of Louisiana.
A teacher who is found guilty by the school board on the charges may petition a court of competent jurisdiction for a full hearing to review the action of the school board. La. R.S. 17:443(B).
Despite the provision for a full hearing, the standard for judicial review of a school board's action is limited to whether there is a rational basis for the board's determination supported by substantial evidence insofar as factually required. Howard v. West Baton Rouge Parish Sch. Bd., XXXX-XXXX (La.6/29/01), 793 So.2d 153; Howell v. Winn Parish Sch. Bd., supra. Substantial evidence has been defined as "evidence of such quality and weight that reasonable and fair-minded men in exercise of impartial judgment might reach different conclusions." Wiley v. Richland Parish Sch. Bd., 476 So.2d 439, 443 (La. App. 2d Cir.1985).
The reasons for dismissal of a teacher are largely within the sound discretion of the school board, whose judgment will not be disturbed absent a clear showing of an abuse of discretion. Gaulden v. Lincoln Parish Sch. Bd., supra. Great deference is due the board's findings of fact and credibility. Gaulden v. Lincoln Parish Sch. Bd., supra; Wiley v. Richland Parish Sch. Bd., supra. The reviewing court must neither substitute its judgment for the judgment of the school board nor interfere with the board's bona fide exercise of discretion. Howell v. Winn Parish Sch. Bd., supra. However, if the action taken by the school board is arbitrary, capricious, or an abuse of discretion, it should be reversed. West v. Tangipahoa Parish Sch. Bd., 615 So.2d 979 (La.App. 1st Cir.1993), writ denied, 618 So.2d 414 (La.1993); Mims v. West Baton Rouge Parish Sch. Bd., 315 So.2d 349 (La.App. 1st Cir.1975).
What constitutes willful neglect of duty was addressed by the Fourth Circuit in Coleman v. Orleans Parish Sch. Bd., 94-0737 (La.App. 4th Cir.2/5/97), 688 So.2d 1312, 1316, writ denied, 97-0622 (La.4/25/97), 692 So.2d 1087, which reviewed jurisprudence, including three cases from this court, and concluded that "under the caselaw, teachers may be dismissed for willful neglect of duty only for a specific action or failure to act in contravention of a direct order or identifiable school policy."[1] Additionally, the Louisiana Supreme Court cited Coleman, supra, with approval in Howard v. West Baton Rouge Parish Sch. Bd., supra, in concluding that where a teacher has been terminated for willful neglect of duty, the board must prove that the teacher willfully or deliberately neglected his duties or acted in contravention of an order or school policy. In the case sub judice, the burden was therefore on BPSB to prove that Wise willfully neglected her duties as a teacher by acting or failing to act in contravention of an order or identifiable school policy with regard to the observations, evaluations, professional assistance schedules, and student referrals which form the basis of the charges of willful neglect of duty against her.

Charges B, C, F, and G
Charges B, C, F and G accuse Wise of willful neglect of duty with regard to the September 28, 1992 classroom observation by Kruithof, the October 1, 1992 classroom *706 observation by Gilbert, the October 29, 1992 evaluation by Gilbert, and the failure of Wise to successfully complete the second professional assistance schedule on November 4, 1992. Our impression upon review of these charges is that in substance they pertain to Wise's competency as a teacher. However, BPSB did not charge Wise with incompetency, one the grounds for dismissal under La. R.S. 17:443(A), nor was she found guilty by the school board of incompetency. Wise was charged with willful neglect of duty and found guilty of willful neglect of duty. Therefore, it was incumbent upon BPSB to show that Wise's classroom management and instructional deficiencies and her failure to meet Gilbert's evaluation standards or to complete the professional assistance schedules to his satisfaction was due to willful neglect of duty. BPSB did not meet this burden.
Charge B pertains to Ken Kruithof's classroom observation of Wise on September 28, 1992, during an eighth grade Louisiana Studies class, which Wise had not previously taught before the 1992-93 school year. According to the observation form completed by Kruithof, he only found Wise's performance unsatisfactory in one area-assisting students to develop positive self-concept and respect for others. He found that she needed improvement in twelve areas of instruction, classroom management and organization, and teacher-student relations. Kruithof noted on the observation form that the students did not seem to know what to do and that Wise seemed unsure of herself. He also noted that Wise did not recognize students whose hands were raised and that the students were rude to each other and to Wise. Kruithof's general appraisal of Wise was that she needed improvement. It is important to note that while Charge B alleges that Wise did not do certain activities, the observation form indicates only that she needed improvement in the majority of the activities listed on the charge.
Kruithof testified that he prepared a list of suggestions to help Wise be a more effective teacher. He met with Wise and went over the observation form with her. He described their conversation as pleasant, and he found her receptive to his suggestions. Kruithof testified that he asked Wise to sign the observation form, but she did not. Instead, she wrote a comment on it and dated it. The comment reads, "We had a wonderful discussion."
Charge C pertains to Gilbert's evaluation of Wise on October 1, 1992, during the same class that Kruithof had observed. Using the same observation form as that used by Kruithof, Gilbert found both Wise's lesson plans and her ability to adjust instruction to be unsatisfactory. Gilbert found that she needed improvement in several areas of instruction, classroom organization and management, and teacher-student relations. His general appraisal of Wise was that she needed improvement. Wise refused to sign the observation form. Again, while Charge C alleges that Wise did not do the activities listed, the observation form completed by Gilbert indicates only that she needed improvement in the majority of the areas listed on the charge. Gilbert testified that based on his own observation on October 1, 1992 and Kruithof's observation, he believed there to be a "pattern of continuing problems" which he discussed with Wise during a conference. As a result of the October 1, 1992 observation, Gilbert implemented a professional assistance schedule for Wise to follow. This plan was the basis for Charge D, which was dismissed by the school board.
Charge F pertains to Gilbert's evaluation of Wise on October 29, 1992, which Wise also refused to sign. Gilbert's general *707 appraisal of Wise's performance was unsatisfactory. He commented on the evaluation form that the "(F)undamentals of teaching and learning are not being met as evidenced by classroom observations and unsuccessful completion of two Professional Assistance Schedules." Gilbert testified that he had implemented a second professional assistance schedule on October 23, 1992, as a result of an observation he conducted that day during which he saw no improvement in Wise's performance. The second schedule required Wise to turn in lesson plans and seating charts by designated times each morning, identify off-task behavior and corrective actions taken for three students in each class, implement designated activities from the first professional assistance schedule, and submit to observations by Gilbert, Allred, and Kruithof. The plan was to conclude with a conference. Gilbert testified that Wise did not complete the second schedule in a satisfactory manner. He believed that instead of improving, her performance declined. He noted that the lesson plans and seating charts were not turned in on time and that the entire point of the seating chart activity was "lost on her." Gilbert also testified that he did not believe that Wise would become a productive teacher as a result of the schedules.
While the observations and evaluations by Kruithof and Gilbert suggest that Wise's overall performance as a teacher was not satisfactory, the evidence does not establish that she failed to perform satisfactorily due to willful neglect of duty. Charges B, C, and G state and BPSB argues that Wise did not make "sincere efforts" to improve her performance and that this constitutes willful neglect of duty. However, the record does not establish that the alleged lack of "sincere efforts" or Wise's failure to perform in the classroom to Gilbert's satisfaction was due to any deliberate or willful act by Wise in contravention of a direct order or school policy. No direct order or school policy was identified as the basis for the charge of willful neglect of duty. Less than satisfactory performance on evaluations and professional assistance schedules does not establish that the teacher deliberately or willfully neglected his duty.
A similar situation was presented in Coleman v. Orleans Parish Sch. Bd., supra, wherein Coleman was charged with incompetence and willful neglect of duty after receiving an unsatisfactory evaluation rating at the end of the 1987-88 school year. Following a tenure hearing, Coleman was dismissed for willful neglect of duty based on twenty charges pertaining to the management of his classroom. The incompetence charge had been dismissed. The decision of the school board was reversed on appeal because there was no testimony concerning any direct orders or identifiable school policy violated by Coleman in the management of his class. Moreover, the majority of the evidence was directed toward the issue of Coleman's competence even though that charge had been withdrawn. The evidence dealt with what Coleman had done wrong in a given situation, rather than his failure to follow orders or school policy. The court concluded that although Coleman had difficulty fulfilling his duty to manage his classroom, there was no showing that his failure was voluntary or due to a conscious act of his will. The court noted that "willful" for purpose of proving a willful neglect of duty "requires some deliberate action on the part of the teacher to avoid or fail to perform a clear duty of his employment." Coleman, 688 So.2d at 1318.
We find that charges B, C, F and G lodged against Wise in the instant matter pertain to competency rather than to willful neglect of duty. The majority of the evidence presented by BPSB as to these *708 charges likewise pertains to Wise's competency as a teacher rather than to any willful or deliberate act on her part to avoid or fail to perform her duty as a teacher. The evidence shows that Wise was receptive to the suggestions made by Kruithof. Gilbert even testified that Wise made sincere efforts to correct her deficiencies but that her efforts fell short of acceptability. Wise testified regarding her use of the suggestions made by Kruithof and her efforts to fulfill the requirements of the professional assistance schedules. Had Wise been charged with incompetency, the evidence presented may have been sufficient to provide a rational basis for the school board's dismissal of Wise. However, the charge was willful neglect of duty. We find that the evidence falls short of establishing that Wise's unsatisfactory classroom performance was due to a deliberate or willful act on her part in violation of a school policy or order.
In addition, we do not find that the allegations in Charges B, C, F, and G regarding Wise's refusal to sign the Kruithof observation form, the evaluations of October 2 and 29, 1992 by Gilbert, and the second professional assistance schedule show a willful neglect of duty. These allegations are minor components of the charges, and are not relevant to Wise's competency in the classroom, which was the essential issue raised by these charges. Kruithof testified that the purpose of signing the observation form was to signify that a conference was held to discuss the results. Although Wise did not sign the Kruithof observation, she did signify that she met with Kruithof to discuss it by writing a note on the observation form. While Wise did not sign the two evaluations by Gilbert, there is no evidence that her failure to sign was a deliberate act to avoid or fail to perform a duty of her employment as a teacher. There was no testimony that Wise refused to sign these forms under direct order or that she was reprimanded for her refusal to do so. There was also no evidence that Wise was aware of any school policy requiring her to sign these forms or that she deliberately refused to sign in violation of any such policy. Finally, the allegation in Charge G that Wise refused to sign the November 4, 1992 professional assistance schedule is simply not supported by the evidence which shows that Wise did sign the second professional assistance schedule on October 23, 1992, when it was implemented by Gilbert.
Upon review of the totality of the evidence pertaining to charges B, C, F, and G, we do not find a rational basis supported by substantial evidence for the school board's dismissal of Wise as a classroom teacher for willful neglect of duty. Its findings that Wise committed willful neglect of duty as to these charges were an abuse of discretion and are hereby reversed.

Charges A and E
These charges allege that Wise demonstrated willful neglect of duty by referring students to the office in contravention of school policy on September 22, 1992 and on October 5, 1992. Gilbert testified that he explained the procedure for referring students to the office on September 21, 1992 during a team meeting. The procedure required a teacher to contact the office by intercom and request assistance when referring a student for discipline. Once notified, either Gilbert or the assistant principal, William Allred, were to go to the classroom to escort the student to the office. Gilbert explained that the purpose of this procedure was to prevent students from getting into trouble while unattended in the hallways of the school. However, both Gilbert and Allred testified *709 that they sometimes allowed students to return to the classroom without an escort.
On September 22, 1992, the day after having been informed of the proper procedure, Wise sent six students to the office at four separate times without an escort. Gilbert issued Wise a written reprimand citing her for an excessive number of student referrals, refusal to follow his instructions, and refusal to provide supervision for all students in her care. Wise declined to sign the reprimand. She testified at the tenure hearing that she did not understand the discipline procedure in that she thought that she had to use the intercom to inform the office when she referred a student.
On October 5, 1992, Wise received another reprimand when she again sent a student to the office in violation of the procedure imposed by Gilbert. Wise signed this second reprimand and wrote that she thought the school secretary said to send the student to the office. Her written comment further explained, "I thought it was odd, but thought perhaps Mr. Gilbert was engaged. I apologize for this. I do know the rule and will not be sending anyone out of my room once bell rings for any reason." Wise testified that she spoke with the secretary over the intercom, and told her that the student was very upset. She understood the secretary to tell her to send the student. Wise insisted that she was not being willfully disobedient or insubordinate. Allred testified that the secretary told him that Wise sent the student to the office in spite of being told that either he or Gilbert would come to her room. The secretary was not called to testify, and neither Allred nor Gilbert could recall specifics such as whether they saw the student or when they found out about the incident.
The evidence does establish that Wise did not follow proper school procedure when she referred students to the office on September 22 and October 5, 1992. Gilbert testified that he believed Wise demonstrated willful neglect of duty by "allowing students to be unsupervised that were scheduled to be in her care and she willfully made that choice." However, we do not find that she demonstrated willful neglect of duty under the circumstances present in this matter.
Several cases have addressed instances of willful neglect of duty involving the failure to supervise students. Teachers were dismissed for willful neglect of duty in Gaulden v. Lincoln Parish School Board, supra, for permitting students to roam the halls during class periods and go into other teacher's classrooms; Cunningham v. Franklin Parish Sch. Bd., 457 So.2d 184 (La.App. 2d Cir.1984), writ denied, 461 So.2d 319 (La.1984), for leaving pre-school handicapped students unattended in a locked classroom while handling matters unrelated to teaching and missing classes without permission or a substitute; Cook v. Natchitoches Parish School Board, 342 So.2d 702 (La.App. 3d Cir.1977), writ denied, 345 So.2d 52 (La.1977), for leaving class unattended for prolonged periods of time and leaving campus without authority; Meyers v. Sabine Parish Sch. Bd., 499 So.2d 690 (La.App. 3d Cir.1986), writ denied, 501 So.2d 236 (La.1987), for refusing to provide supervision to students assigned to classroom during the teacher's free hour; and Simon v. Jefferson Davis Parish Sch. Bd., 289 So.2d 511 (La.App. 2d Cir.1974), writ denied, 293 So.2d 178 (La. 1974), for leaving classroom unattended for fifteen minutes, during which time a disturbance occurred among students. In these cases, the teachers either refused to provide any supervision for the students, left the students alone to attend to matters unrelated to their employment duties, or *710 left students unsupervised without regard for their safety.
What distinguishes the actions of the teachers in these cases from the actions of Wise is that Wise did not willfully refuse to provide supervision to the students whom she sent to the office for disciplinary assistance. Wise did not leave her class unattended, there was no obvious endangerment to the students who were sent to the office, and there was no evidence that any disturbance occurred. Any lack of supervision that occurred was due to Wise's efforts to perform her duty as teacher by attempting to obtain disciplinary assistance from her superiors. She may not have followed the approved procedure at Cope Middle School, but the evidence does not establish that her failure to do so was a willful neglect of duty as a teacher or a deliberate act of insubordination or defiance to the principal's authority.
We do not find a rational basis supported by substantial evidence for the school board's determination that Wise demonstrated willful neglect of duty with regard to charges A and E. Accordingly, we find that the board abused its discretion in dismissing Wise as a classroom teacher on the basis of these charges.

CONCLUSION
While we are mindful of the discretion afforded school board's in determinations regarding teacher tenure hearings, we are constrained in this instance to reverse the dismissal of Sonja Wise and order her reinstatement as a teacher with BPSB with all salary, compensation, and emoluments. Costs are assessed to appellee, BPSB.
REVERSED.

APPLICATION FOR REHEARING
Before NORRIS, C.J., STEWART, CARAWAY, PEATROSS, and DREW, JJ.
Rehearing denied.
CARAWAY, J., would grant rehearing.
NOTES
[1] The cases cited from the Second Circuit are Gaulden, supra; Wiley, supra; and Cunningham v. Franklin Parish Sch. Bd., 457 So.2d 184 (La.App. 2d Cir.1984), writ denied, 461 So.2d 319 (La.1984).