664 So.2d 1259 (1995)
Mildred SYLVESTER
v.
Edward CANCIENNE, Jr. and Assumption Parish School Board.
No. 95 CA 0789.
Court of Appeal of Louisiana, First Circuit.
November 9, 1995.
*1260 Anthony P. Lewis, Thibodaux, for Plaintiff-Appellant.
David A. Hamilton, Baton Rouge, for Defendants-Appellees.
Before WATKINS, FOIL and TANNER, JJ.[1]
THOMAS W. TANNER, Judge Pro Tem.
This matter is an appeal by Mildred Sylvester, a tenured employee who was demoted from her position as principal at Labadieville Primary School to classroom teacher with commensurate pay, on charges of incompetency and willful misconduct arising out of an incident wherein Mrs. Sylvester allegedly restrained a behaviorally disordered five-year-old to a desk with rope, bound his ankles and wrists with duct tape, and left him in an open doorway (in public view) for approximately two hours. The Assumption Parish School Board found Sylvester guilty of both incompetence *1261 and willful neglect, and voted to adopt the recommendation of the superintendent, Dr. Edward Cancienne, Jr., in favor of demotion. Mrs. Sylvester appealed to the district court; that court upheld the action of the School Board. This appeal followed. After a thorough review of the entire record, we affirm.

Standard of Review
The standard of judicial review of a school board's action is whether there is a rational basis for the board's determination supported by substantial evidence insofar as factually required. In such cases, the reviewing court must neither substitute its judgment for the judgment of the school board nor interfere with the board's Bona fide exercise of discretion. Howell v. Winn Parish School Board, 332 So.2d 822 (La. 1976). Therefore, unless our review of the transcript of the hearing before the school board and the record of testimony and evidence presented to the district court reveals an arbitrary decision or an abuse of discretion, we must affirm.

The Incident
Mildred Sylvester has been an employee of the Assumption Parish School system for over thirty years; the last fourteen of those she held the position of principal at Labadieville Primary School. The record reflects that she maintained satisfactory evaluations throughout her tenure, prior to the incident at issue. On October 4, 1993, a five-year-old kindergarten child[2], who was known to be behaviorally disordered, was taken to Mrs. Sylvester's office because his teacher, Natalie Richard, was having problems with his disruptive behavior. Mrs. Richard testified that she had been having problems with the student since early that morning, and at approximately 10:45 a.m. she picked him up and took him to Mrs. Sylvester's office. She did not see the child again until approximately 1:00 p.m. when he was returned to her classroom; at this time she noticed he had sticky tape residue on his arms. She testified that she did not have any further problems with him that day.
Mrs. Soudelier, who teaches noncategorical preschool children with developmental delays at Labadieville Primary, testified that at approximately 10:30 or 11:00 a.m. on October 4, 1993, she went to Mrs. Sylvester's office to deliver a report to inter-office mail. When she entered the front office, she noticed a student whose wrists and ankles were bound in duct tape, sitting in a small desk in the doorway of Mrs. Sylvester's office. She also observed that the student's arms were roped to the back of the desk with red and white rope, and that his legs straddled the desk, and were also roped separately to the legs of the desk. She testified that the child was crying and asked her to please undo him, as he wanted to return to the classroom. She looked around for Mrs. Sylvester and/or Mrs. Hill, the secretary, in an attempt to ascertain why the child was restrained as he was. However, she was unable to find any adults in or near the principal's office, so she stayed with the child until she saw the secretary coming down the hallway returning to her office. Mrs. Soudelier then returned to her classroom.
Mrs. Soudelier also testified that she recognized and was familiar with the student and his problems, as she had, on prior occasions been called on by his teachers to help at times when his behavior became disruptive and necessitated "time-out" periods or restraints. In particular, she recounted an incident which occurred on September 29, 1993, wherein Mrs. Sylvester had called for her help over the school's intercom system. When Mrs. Soudelier arrived at Mrs. Sylvester's office, the child was out of control, swinging his arms and kicking. She placed the child on the floor in a nearby bathroom, and employed "scissor grip" restraints, whereby she wrapped her legs around the child's legs, secured his arms, and spoke with *1262 him quietly for a period of 20 to 30 minutes, until he had calmed down.
Marsha Ledell, the school's speech therapist who had provided therapy for this child and was aware of his behavioral problems, also observed the restraining of the child on October 4, 1993. She testified that at approximately 12:15 p.m. on that day, she went to the principal's office to get some copy paper. She was waiting for Mrs. Hill to get it for her, when she heard the child crying out to her, asking for help in getting out of the desk. She then recognized the child as her student and observed that he was roped around both arms to the desk; she also observed rope at the bottom of the desk, though she could not see where it was bound. Shortly after leaving the office, Mrs. Ledell called and reported the incident to her superior, Bob Pagan, the evaluation coordinator for the parish schools' pupil appraisal office.
Mrs. Ledell also recounted a prior incident with the child, which had occurred on October 1, 1993, wherein she assisted the school counselor, Amy Bridges, in restraining the child during an apparent temper tantrum. Mrs. Ledell described the restraining technique employed by Ms. Bridges and herself in much the same way as Mrs. Soudelier explained the "scissor-grip" method. Mrs. Ledell further testified that after the October 1, 1993 incident, she had a conversation with Mrs. Sylvester about the child's continuing behavior problems and she relayed to the principal the method by which she and Ms. Bridges had successfully restrained the child.
Marilyn Orgeron, another teacher at Labadieville Primary, also witnessed the October 4, 1993 incident. She testified that at approximately 12:30 p.m. she was taking an injured child to the principal's office when she noticed a child sitting in a desk at the doorway to Mrs. Sylvester's office. She observed rope tied to the back of the desk and wide gray tape on the child's wrists. She remained in the office for approximately 10 minutes, then returned to her classroom.
Melanie Barbier, a noncategorical preschool teacher at the school also testified that she witnessed the child in the desk in the doorway to Mrs. Sylvester's office at approximately "midday" on October 4, 1993. She had gone to get a paper signed by Mrs. Sylvester when she observed the child crying, his wrists bound in duct tape. She also testified about prior experiences in which the child had temper tantrums and she put him in time-out or took him for walks to calm him down.
Mildred Sylvester also testified regarding the October 4, 1993 incident. According to Mrs. Sylvester, at approximately 11:00 a.m., she and her secretary, Mrs. Hill, were trying to complete a report when they were interrupted at approximately 11:20 a.m. by the child being brought into her office "in quite a rage." She stated that she sat him in a chair and told him he would have to stay there because she was busy. The child attempted to escape the office twice; he was returned the second time by a maintenance man who was in the hallway. Mrs. Sylvester stated that at this point, the child began pulling the curtains down, and began throwing things off of her desk and onto the floor. Then, she testified, "I told my secretary toI said, `If I could just find something to hold him in that chair, maybe we can finish this before lunch.'" She then, "at about ten minutes to twelve," got a piece of tape, approximately two feet long, cut it in two, and taped one piece on, but not completely around, the child's wrists, and taped the other piece, in a similar fashion, on the child's ankles. She testified that it took her ten minutes to apply the tape. At approximately 12:10 p.m., she received a phone call from Dr. Cliff Ouder, the Director of Special Education and Pupil Appraisal Services for Assumption Parish, regarding the incident, which had apparently already been reported by Mrs. Ledell to Mr. Pagan. Mrs. Sylvester testified that, during this conversation, Mrs. Hill brought the child a lunch tray. She stated she observed the child take the tape, with his mouth, off of his wrists, off of his feet and put it into the trash can. She stayed with him while he ate his lunch. At approximately 12:50 p.m., she got Mr. Leon, the assistant principal, to escort *1263 the child back to Mrs. Richard's classroom. She stated that the tape remained on the child for a total of ten to fifteen minutes, and she denied that any rope had been used at all.

The Appeal

Assignment of Error One
Mrs. Sylvester first argues that she was denied procedural due process by the School Board when it allowed school board member, Joe Harrison, to preside over the case as a member of the school board over Mrs. Sylvester's objections on the grounds of bias. At the outset, we note that Mr. Harrison did not "preside" over the hearing; rather he sat as one of eight members of the board in a fact finding role, and voted, along with the majority, in favor of the demotion. (The board found Mrs. Sylvester guilty of incompetency by a vote of 9-0, and guilty of willful neglect by a vote of 7-2.)
Furthermore, appellant made no attempt to introduce evidence in support of the allegations of bias and prejudice, but rather, merely objected to Mr. Harrison's participation at the tenure hearing "due to his activities regarding the C.O.P.E. and Ms. Jackson and her support of Mrs. Sylvester's case" which according to Mrs. Sylvester, suggested bias. Mr. Harrison was given an opportunity to respond and he asserted his intent to make an objective decision based on all the information after it was presented at the hearing. At the district court, appellant attempted to enlarge the allegation of bias by seeking to introduce evidence that there was political rivalry between Mr. Harrison and Mrs. Sylvester's husband. The trial court denied the introduction of evidence in support of this newly raised allegation, stating that the proper forum in which to present this evidence was at the tenure hearing; since appellant had offered no evidence at that time, she was precluded from doing so at the appeal.
We find no error in the ruling of the trial court. Nor do we find any support in the record for the allegations of bias against Mr. Harrison. Furthermore, we note that the record is devoid of any evidence of actual bias on the part of Mr. Harrison, and no evidence has been presented to show that Mrs. Sylvester was prejudiced in any way by his participation. Finally, we note that the vote of guilty was unanimous on one charge, and 7-2 on the other; therefore, the result would have been the same even without Mr. Harrison's participation.

Assignment of Error Two
Appellant argues that the trial court erred in finding that she was afforded procedural due process in her tenure hearing when the "tape recorded statements of alleged witnesses made by the School Board Investigatory Committee prior to the Tenure Hearing were not heard by the School Board prior to the Tenure Hearing" and because such taped statements "were not made available to Appellant prior to the Tenure Hearing pursuant to her formal request."
Appellant has cited no statutory authority or case law to support this asserted right to prehearing discovery in the tenure hearing process. Additionally, while appellant is correct that the board did not hear the taped statements, both the board and Mrs. Sylvester were presented with a written report compiled by the investigating committee summarizing the contents of the interviews. Furthermore, at the hearing, appellant was presented with the live testimony of eyewitnesses to the incident, and she was afforded full rights of cross examination.
Given the absence of any statutory or jurisprudential authority for the right of discovery of these tapes, and the availability of these same witnesses at the extensive hearing in this matter, we agree with the trial court that Mrs. Sylvester's due process rights were not violated and that the provisions of the tenure law were complied with.

Assignment of Error Three
Appellant complains that she was also denied procedural due process when the trial court refused her access to the child's medical records that were maintained by the *1264 State for the purposes of assisting her in her defense. She also asserts in this assignment that she was wrongly prohibited from soliciting testimony that "would have explained what caused the child ... to have an uncontrollable temper tantrum."
We find no merit in this argument. First, we note that there was much testimony presented, on behalf of Mrs. Sylvester, regarding the child's problems: behavioral, psychological and emotional. There has been no evidence presented to support the allegation that she was denied access to the records. More importantly, however, we find that any evidence about the child's medical history, to which Mrs. Sylvester may have been denied access, would have been irrelevant to the issue in this matter: whether Mrs. Sylvester's actions in restraining the child on October 4, 1993, constituted incompetence and/or willful neglect. It has been uncontested throughout these proceedings that the child was behaviorally disordered; therefore, the underlying medical reasons for this are both superfluous and irrelevant to the issue of the propriety of Mrs. Sylvester's actions.

Assignment of Error Four
Appellant also alleges that she was denied procedural due process by the trial court when it refused to allow testimony regarding after-adopted policy on the theory that it was irrelevant. Again, appellant's argument is without merit. Appellant suggests that because the school board, as of October 4, 1993, did not have in force a specific policy regarding proper restraining techniques and prohibiting the use of duct tape and rope, Mildred Sylvester's conduct could neither constitute incompetence nor willful neglect. The trial court did not err in concluding that evidence regarding the existence or nonexistence of a policy was irrelevant in determining whether Mrs. Sylvester's actions were proper. Mrs. Sylvester, by virtue or her education, experience, and certification is required to conduct herself according to dictates of professional and common sense, even in the absence of a policy prohibiting certain conduct.
Not only do we agree that duct taping and roping an already disturbed five-year-old child is conduct violative of professional and common sense, we find this conclusion is clearly supported by the record. Dr. Joseph Witt, an expert in child and school psychology and behavioral intervention specialist, testified that the procedure utilized by Mrs. Sylvester to restrain this child is potentially harmful and certainly detrimental, and would not be approved for use in prisons or psychiatric hospitals. He also stated that he had never heard of this particular intervention being used before. Even plaintiff's expert, Dr. Jim Sears, testified that the use of duct tape and rope is an inappropriate method of restraint in light of other available options. The record is replete with evidence that there were other available methods, and persons to whom Mrs. Sylvester could have turned to for help in employing such methods to restrain the child on October 4, 1993.

Assignments of Error Five and Six
In her last two arguments, appellant contends the board was arbitrary and capricious in finding Mrs. Sylvester guilty of incompetence and willful neglect. As a reviewing court, if we find a rational basis for the board's determinations, supported by substantial evidence, we must affirm. Mrs. Sylvester's conduct forms the rational basis for the board's decision; the record is replete with competent evidence to support it. The decision is affirmed. Costs of this appeal are assessed to the appellant.
AFFIRMED.
NOTES
[1] Judge Thomas W. Tanner, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The identity of the child has been protected throughout these entire proceedings; he will remain anonymous herein.