793 So.2d 153 (2001)
James HOWARD
v.
WEST BATON ROUGE PARISH SCHOOL BOARD.
No. 2000-C-3234.
Supreme Court of Louisiana.
June 29, 2001.
Charles W. Rea, Baton Rouge, for applicant.
Patrick M. Amedee, Metairie, for respondent.
TRAYLOR, J.[*]
Plaintiff, a tenured teacher was terminated by the West Baton Rouge Parish School Board (School Board) for willful neglect of duty after he brought a gun on campus in his car. Plaintiff appealed and the termination was upheld by the district court and court of appeal. The court of appeal held that evidence supported finding that teacher committed willful neglect of duty by bringing a gun to school in his car. We granted writs in this case to consider whether plaintiff's employment was properly terminated for willful neglect of duties under the Louisiana Teachers' *154 Tenure Law, La.Rev.Stat. 17:443. For the following reasons, we reverse the ruling of the School Board and judgment of the trial court, and reinstate plaintiff to his former position.

FACTS AND PROCEDURAL HISTORY
Plaintiff, James Howard, was a tenured vocational education instructor who taught "shop" for approximately thirteen years in the field of auto mechanics at the Vocational Skills Center located on the campus of Port Allen High School. On Friday, October 4, 1996, he drove his wife's car, a 1991 Nissan Sentra, to work and parked it outside of his shop-classroom.[1] Upon leaving work that afternoon, he discovered that his wife's .38 caliber Smith and Wesson revolver was missing and, after conferring with his wife and searching his home, concluded the gun was stolen.
On Monday, October 7, 1996, Howard reported the theft to Alfred Johnson, the director of the Vocational Skills Center. Howard and Johnson later met with Paul Fouquier, director of instructor support services of the West Baton Rouge Parish School System, who instructed Howard to report the incident to the sheriffs department. Howard complied and told the deputy that, although the gun may have been stolen from a local Napa Autoparts Store before school, he believed it was stolen from his vehicle while parked on campus. On Tuesday, October 8, 1996, Howard met with Beverly Triche, superintendent of the West Baton Rouge Parish School System, who thereafter placed him on paid suspension pending further notice. On October 21, 1996, Howard filed a supplemental complaint with the sheriffs department asserting the gun was stolen from the vehicle at Napa, not the campus as he originally believed.
On February 5, 1997, the School Board gave Howard written notice of charges of willful neglect of duty concerning the loss of the firearm. The superintendent later reasoned the charges of willful neglect were appropriate because, "any employee or any teacher who will place a vehicle in the proximity of students where they can go into a vehicle and pick a gun up is neglectful of providing for the health and safety of the students under their responsibility," that "teachers are role models, and ... if I'm not going to allow a student to have a weapon on campus, I cannot allow a teacher to have a weapon on campus." However, the superintendent named no written or identifiable policy prohibiting teachers from possessing a gun which is completely concealed within a motor vehicle on campus and stated that she was not concerned with any impact this may have upon Howard's constitutional rights. On March 5, 1997, Howard's case proceeded to a School Board hearing wherein several witnesses testified but not one of them provided evidence that Howard violated an order or policy by bringing the gun on campus in his vehicle or that the school had such a policy in place. Notwithstanding this, the School Board unanimously voted that the superintendent demonstrated by a preponderance of the evidence that Howard was guilty of willful neglect of duty and unanimously terminated his employment. Howard appealed the School Board's decision to the district court, which affirmed the decision on June 17, 1998.
Howard appealed to the court of appeal, which affirmed the termination,[2] on the *155 limited issue of whether the School Board's decision to terminate appellant's employment was based on substantial evidence. Finding that it was, the court of appeal affirmed the decision of the School Board and judgment of the trial court. Howard sought writs with this court.

LAW AND DISCUSSION
The sole issue before this court is whether Howard's employment was properly terminated for willful neglect of duties under the Louisiana Teachers' Tenure Law (Law), La.Rev.Stat. 17:443. According to the Law, willful neglect of duty is a ground upon which a tenured teacher may be terminated.[3] Regarding the factual question as to whether the gun was actually in his car when he reported to work or whether it had already been stolen from the car at the Napa Autoparts Store, we accept the lower courts' findings that the gun was in Howard's vehicle when he entered the school campus.
According to the court of appeal in this case, a teacher can be found guilty of willful neglect of duty if he had "some knowledge" that his actions were contrary to school policy based on "general knowledge" concerning the responsibility and conduct of teachers. It is not seriously contested that, on the date in question, appellant's vehicle was not parked in the faculty parking lot, but was parked near his classroom. The court of appeal found Howard brought the gun on school grounds, had knowledge that a gun was kept in the vehicle, and that he parked the vehicle in an area easily accessed by the students. We do not find this dispositive of willful neglect of duty and do not agree that a tenured teacher may be terminated based upon the evidence in the record in the instant case.
This court has previously reversed the termination of tenured teachers where there is no evidence that the teacher was uncooperative, committed a dereliction of duty, was not warned regarding deficiencies, kept poor records, or failed to discharge her professional duties and responsibilities, Lewing v. De Soto Parish School Bd., 238 La. 43, 113 So.2d 462 (1959); and where the teacher informed his principal of a needed absence and, although he was not specifically authorized, he was not told he could not take it, Howell v. Winn Parish School Bd., 332 So.2d 822 (La.1976).
Both the Teacher's Tenure Act and the jurisprudence of this state has traditionally protected the employment security of its worthy tenured teachers. Lewing v. De Soto Parish School Bd., 238 La. 43, 113 So.2d 462 (1959). The Fourth Circuit, in Coleman v. Orleans Parish School Bd., 93-0916, 94-0737 (La.App. 4 Cir. 2/5/97); 688 So.2d 1312, writ denied, 97-0622 (La.4/25/97); 692 So.2d 1087, extensively *156 reviewed and discussed the jurisprudence concerning "willful neglect of duty" cases and concluded the proper dismissal of tenured teachers for willful neglect of duty lies only where the teacher had some knowledge that his actions were contrary to school policy gained either through warnings from his supervisors or from general knowledge concerning the responsibilities and conduct of teachers. Id. The Coleman court concluded that "teachers may be dismissed for willful neglect of duty only for a specific action or failure to act in contravention of a direct order or identifiable school policy." Id. at 1316. We agree.
Actions for which teachers of this state have not been terminated include where: teacher with an unblemished record was not terminated for showing students movies containing nudity, vulgarity, violence, and explicit scenes, West v. Tangipahoa Parish School Bd., 615 So.2d 979 (La.App. 1 Cir.1993); teacher showed junior highschool students "R" rated movie because school had no film policy in effect, Jones v. Rapides Parish School Bd., 634 So.2d 1197 (La.App. 3 Cir.1993); teacher in an isolated incident displayed a gun to a student to defend himself when physically attacked, Landry v. Ascension Parish School Bd., 415 So.2d 473 (La.App. 1 Cir.1982); teacher is unable with much effort to control class, Coleman, 688 So.2d at 1312; teacher violated trivial lunch regulations and actions were immediately corrected, Johns v. Jefferson Davis Parish School Bd., 154 So.2d 581 (La.App. 3 Cir.1963); teacher is absent due to pregnancy, childbirth, and recuperation, Gassen v. St. Charles Parish School Bd., 7 So.2d 217 (La.1942).
Actions for which teachers of this state have been terminated include where: teacher read sexually suggestive material to students and used profanity, Williams v. Concordia Parish School Bd., 95-980 (La.App. 3 Cir. 1/31/96), 670 So.2d 351; teacher tied five year old behaviorally disordered student to a desk, bound at the ankles and wrists with duct tape, and left him in the doorway in public view for two hours, Sylvester v. Cancienne, 95-0789 (La.App. 1 Cir. 11/9/95), 664 So.2d 1259; teacher's deficiencies in record keeping which jeopardized accreditation, Gaulden v. Lincoln Parish School Bd., 554 So.2d 152 (La.App. 2 Cir.1989); teacher left students unattended in direct contravention of principal's orders at least once, Meyers v. Sabine Parish School Bd., 499 So.2d 690 (La.App. 3 Cir.1986); teacher left handicapped students locked unattended in classroom, missed classes without permission or substitute, and knew her conduct was contrary to school policy, Franklin Parish School Bd., 457 So.2d 184 (La.App. 2 Cir.1984); teacher, despite contentions he was not notified of school regulations, was terminated for making racial and sexual statements, assuming role of hall supervisor, failing to provide lesson plans and roll book to substitutes, and refusing to accept criticism from principal, although frequent use of vulgarity, profanity and physical threats alone would not be, Simon v. Jefferson Davis Parish School Bd., 289 So.2d 511 (La.App. 3 Cir.1974); teacher fails to comply with reasonable regulations adopted for proper administration of schools, Blanchet v. Vermilion Parish School Bd., 220 So.2d 534 (La.App. 3 Cir. 1969); teacher refused to allow supervisory personnel to enter his classroom, even after he was advised that board regulations specifically required him to do so, Tichenor v. Orleans Parish School Bd., 144 So.2d 603 (La.App. 4 Cir.1962).
In the cases cited wherein teachers were terminated for willful neglect of duty, the trend has been that the teacher must violate a policy or order or where there is a dereliction of duty in order to be found guilty of willful neglect of duty. Thus, the *157 School Board must prove Howard willfully or deliberately neglected his duties or acted in contravention of an order or school policy.
Accordingly, we have reviewed the record in the instant case to determine whether it reveals a rational basis supported by substantial evidence that Howard either acted or failed to act in contravention of a direct order from a supervisor or against an identifiable school policy. Our review of the record supports Howard's arguments. The School Board presented evidence that Howard, in bringing the gun on campus in his vehicle, had made a mistake and possibly endangered the students, but did not rise to the level of a failure to follow orders or identifiable school policy. Howard had no history of discipline or charges filed against him. Johnson, the director of the vocational skills center, testified that he had no problems with Howard before the gun incident. Fouquier, the director of instructor support services for the School Board, testified that Howard was a good and valued employee. Triche, the superintendent, testified that she believed Howard had acted unprofessionally on one occasion concerning a threat he received from a student but that she did not discipline him for the statement.
Despite this provision for a full hearing before the district court, the standard of judicial review of a school board's action is still whether there is a rational basis for the board's determination supported by substantial evidence insofar as factually required. Howell v. Winn Parish School Bd., 332 So.2d 822 (La.1976). In such cases, the reviewing court must neither substitute its judgment for the judgment of the school board nor interfere with the board's bona fide exercise of discretion. Id., State ex rel. Rathe v. Jefferson Parish School Bd., 206 La. 317, 19 So.2d 153 (1943). Upon review of the transcript and all evidence on the record in this matter, we cannot say that the School Board has proved by substantial evidence that Howard acted with willful neglect. The School Board did not have a rational basis supported by substantial evidence to terminate Howard for willful neglect of duty. The record indicates that the School Board was satisfied that Howard fulfilled his duties as a teacher to the best of his ability. The record does not support a finding that he intended his gun to be stolen and the behavior of his students certainly was not voluntary on his part. Thus, we reverse the School Board, trial court, and court of appeal. We reinstate Howard to his former position with all salary, compensation, and emoluments.

CONCLUSION
Accordingly, we reverse the decision of the School Board to terminate Howard, the judgment of the district court upholding the dismissal for willful neglect of duty, and overrule the court of appeal opinion affirming these decisions.
KIMBALL. J., dissents for reasons assigned by KNOLL, J.
KNOLL, J., dissents and assigns reasons.
KNOLL, J., dissenting.
Although the majority opinion recognizes that willful neglect of duty may be found where a tenured teacher has knowledge that his actions are contrary to school policy or from general knowledge concerning the responsibilities and conduct of teachers, the opinion turns on a finding that the School Board had to prove that Howard either acted or failed to act in contravention of a direct supervisory order or against an identifiable school policy. In making this determination, the majority *158 fails to acknowledge that willful neglect of duty may arise from the tenured teacher's general knowledge concerning the responsibilities and conduct of teachers.
By virtue of his education, experience, and certification, Howard was required to conduct himself according to the dictates of professional and common sense, even in the absence of a specific policy prohibiting his conduct. Sylvester v. Cancienne, 95-0789 (La.App. 1 Cir. 11/9/95), 664 So.2d 1259, 1264, writ not considered, 95-3128 (La.1/26/96), 666 So.2d 663. "[A] classroom teacher, merely by the nature of that position should be aware of the impropriety of some practices." Simon v. Jefferson Davis Parish School Bd., 289 So.2d 511, 517 (La.App. 3 Cir.), writ denied, 293 So.2d 178 (La.1974); see also Cunningham v. Franklin Parish School Bd., 457 So.2d 184, 189 (La.App. 3 Cir.), writ denied, 461 So.2d 319 (La.1984).
By virtue of the legislative enactment of numerous statutes, it is clearly the policy of this State to protect students from firearms on school campuses. LA.REV.STAT. ANN. §§ 14:95.2, 14:95.6 (recognizing the establishment of gun free school zones); LA.REV.STAT. ANN. §§ 17:416.3(A)(2)(b) and 17:416.6 (permitting random searches and the use of metal detectors in schools); LA. REV.STAT. ANN. § 17:416(C)(2)(a)(i), (b)(i), and (c)(i) (establishing mandatory suspension and expulsion guidelines for students who possess handguns on school property). Thus, professionalism and common sense suffice to establish that Howard had a duty not to bring a firearm in his vehicle and to park that unlocked vehicle[1] just outside his classroom.
Having found that the School Board established a general duty for Howard to follow, I further find that even though there was contradictory evidence presented, there was a rational basis for the School Board's determination that Howard's actions were willful, i.e., voluntary and knowing. Howard testified that he was aware that a loaded gun was customarily kept in the vehicle he brought to the school campus on October 4, 1996. Likewise, when Howard reported the theft of the handgun to Deputy Shawn Schexnaildre, Howard told Schexnaildre that he knowingly brought the handgun to the campus because a student had threatened him. Although Howard later disputed Schexnaildre's recollection, the lower courts resolved this credibility issue against Howard. The majority decision of this Court now upsets the findings of the lower courts and substitutes its judgment for that of the local school board. In stark contrast to the majority decision, I find a rational basis for the school board's determination supported by substantial evidence. Accordingly, I would uphold the decisions of the lower courts. Therefore, I respectfully dissent from the majority opinion.
NOTES
[*] Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, sitting for Associate Justice Harry T. Lemmon; Judge Felicia Toney Williams, of the Second Circuit Court of Appeal, assigned as Justice Pro Tempore, sitting for Associate Justice Bernette J. Johnson.
[1] The vehicle's exact location on campus was disputed but the lower courts accepted as fact that Howard parked the Nissan outside of the classroom on the day in question.
[2] Howard alleged the trial court erred in: 1) not following the law regarding termination of tenured teachers; 2) not following Louisiana law as it relates to the Board's burden of proof; 3) not following Louisiana law regarding possession of firearms; 4) not recognizing that the Board failed to conduct a "fair and impartial" hearing before termination as required by Louisiana tenure laws; and 5) not providing written reasons despite an order to do so. The court of appeal found the last two assignments of error were not briefed and were, therefore, considered abandoned under the Uniform Rules, Courts of Appeal, Rule 2-12.4. Furthermore, the court of appeal found that Howard made no claim that the hearing was not conducted in accordance with the formalities of La.Rev.Stat. 17:443 and accordingly considered only the remaining assignments of error.
[3] Under La.Rev.Stat. 17:443 a tenured teacher may additionally be terminated for the following grounds: incompetency or dishonesty, or for being a member of or contributing to any group, organization, movement or corporation that is by law or injunction prohibited from operating in the state of Louisiana.
[1] As noted by Howard and Deputy Schexnaildre, the vehicle must not have been locked because there was no evidence of a forced entry.