885 So.2d 1225 (2004)
Ernestine SPURLOCK
v.
EAST FELICIANA PARISH SCHOOL BOARD.
No. 2003 CA 1879.
Court of Appeal of Louisiana, First Circuit.
June 25, 2004.
Writ Denied October 29, 2004.
*1226 Floyd J. Falcon, Jr., Baton Rouge, Counsel for Plaintiff/Appellant Ernestine Spurlock.
Robert L. Hammonds, Baton Rouge, Counsel for Defendant/Appellee East Feliciana Parish School Board.
Before: WHIPPLE, KUHN, and MCDONALD, JJ.
MCDONALD, J.
Ernestine Spurlock, the plaintiff, was a tenured teacher for the East Feliciana Parish School Board teaching second grade at Slaughter Elementary School for the 2001-2002 school year. After an incident that occurred on February 25, 2002, she was charged with willful neglect of duty and, after a tenure hearing before the School Board, her employment was terminated. Ms. Spurlock thereafter filed a petition for reinstatement with the Twentieth Judicial District Court asking that the decision be reversed and that she be reinstated to her tenured position with the School Board. The trial court denied the petition for reinstatement and affirmed the decision of the School Board. Ms. Spurlock is appealing that judgment. We affirm.

THE INCIDENT
The specific reasons for the charge against Ms. Spurlock were detailed as follows:
On or about Monday, February 25, 2002, it was reported to Mrs. Ernestine Spurlock, Second Grade Teacher at Slaughter Elementary School; that three (3) of her male students had been "humping the wall" in the boys' restroom. In front of all of the students in her classroom, Mrs. Spurlock then ordered the student who reported the behavior of the other students to demonstrate the "humping" he had observed in the restroom. When the other three (3) students returned from the restroom, she *1227 also ordered them to "hump" the wall of the classroom in front of the other students. Mrs. Spurlock then asked the students in the presence of the other students in the classroom whether the wall had "done anything for them". She then made each of them say the word "penis" out loud and asked them if they knew what came out of a penis. Mrs. Spurlock went on to tell the [misbehaving] male students that their penises were not as big "as a straw" and that she hoped that they would hurt them so that they would swell up and break. These actions by Mrs. Spurlock constituted willful neglect of duty on her part.
Doris Rieger, a classroom aide who witnessed this incident, testified that the students were embarrassed in front of their peers, and that when each of them tried to discontinue "humping the wall," they were directed to continue. Ms. Rieger further testified that she felt humiliated and hurt by the incident, and was sick to her stomach when she left the classroom. One boy asked her why the students were "made to do that," and she answered that she just couldn't explain it at that time. Ms. Rieger went directly to the principal's office to report the incident, but the principal was not in.
Slaughter Elementary School Principal Kimberly Glascock testified that she was at a school board meeting when the incident occurred, and when she got home that afternoon she received two phone calls from parents about the incident. She told the parents they could come to her office the next morning to discuss it. The next morning, three parents came to her office. Ms. Glascock investigated the incident, questioned each of the boys involved separately, and found their statements were consistent with those of Ms. Rieger. She then forwarded the information about the incident to the East Feliciana Parish School Board Superintendent.

THE STANDARD OF REVIEW
Judicial review of tenure proceedings must be limited to an inquiry of whether the School Board complied with the statutory formalities under Louisiana's Teacher Tenure Law and whether the School Board's findings were supported by substantial evidence. Substantial evidence has been defined as evidence of such quality and weight that reasonable and fair-minded men in exercise of impartial judgment might reach different conclusions. In conducting such an examination, the district court must give great deference to the school board's findings of fact and credibility. Reasons for dismissal are largely in the sound discretion of the School Board. Wise v. Bossier Parish School Board, XXXX-XXXX, pp. 5-6 (La.6/27/03), 851 So.2d 1090, 1094.

THE ASSIGNMENTS OF ERROR
Ms. Spurlock asserts that the trial court erred in affirming the decision of the School Board dismissing her; that the trial court erred in concluding that the School Board could dismiss a tenured teacher where she was not charged with violating any written policy or direct order where admittedly there was no written policy prohibiting the conduct and no refusal to obey a direct order; that the trial court erred in concluding that there was no necessity for the School Board to have a written policy prohibiting the conduct committed by her; that the trial court erred in concluding that sufficient evidence was presented to the School Board to sustain the dismissal of a tenured teacher; and that the trial court erred in concluding that the evidence demonstrated conduct below unspecified standards of general knowledge and common sense.[1]

*1228 ANALYSIS
Although Ms. Spurlock makes six assignments of error, her essential argument is that the School Board failed to prove that she violated any direct order or identifiable school policy. She relies in large part upon Howard v. West Baton Rouge Parish School Board, XXXX-XXXX (La.6/29/01), 793 So.2d 153. In that case the plaintiff, a tenured vocational education instructor, parked his wife's car, containing a .38 caliber revolver, outside the school shop. The gun was apparently stolen while the car was parked on campus, and Mr. Howard notified school authorities of the theft. He was thereafter charged with willful neglect of duty for bringing a gun onto the school grounds.
After a tenure hearing, the School Board unanimously voted that Howard was guilty of willful neglect and terminated his employment. The District Court affirmed the School Board and the Court of Appeal affirmed the District Court's decision. The Louisiana Supreme Court granted writs and reversed, finding that the School Board failed to prove that the plaintiff violated any direct order or identifiable school policy. Howard, XXXX-XXXX at p. 7, 793 So.2d at 157. Ms. Spurlock asserts that in her case, as in the Howard case, there is no written policy or direct order that was violated.
However, in Howard the court also held that the proper dismissal of tenured teachers for willful neglect of duty lies only where the teacher had some knowledge that his actions were contrary to school policy gained either through warnings from the supervisors or from general knowledge concerning the responsibilities and conduct of teachers. Howard, XXXX-XXXX at p. 5, 793 So.2d at 156. The Howard court noted that the trend has been that the teacher must violate a policy or order where there is a dereliction of duty in order to be found guilty of willful neglect of duty, and went on to find that in that particular case, the analysis turned upon whether the teacher acted or failed to act in contravention of a direct supervisory order or against an identifiable school policy. Howard, XXXX-XXXX at pp. 6-7, 793 So.2d at 156-157.
Our careful reading of Howard, however, convinces us that, in its wisdom, left the door open for a case such as this, where the conduct of the teacher is so outrageous or egregious that willful neglect of duty can be found without a specific action or failure to act in contravention of a direct order or identifiable school policy.
The jurisprudence provides guidance as to the type of behavior that has led to the termination of tenured teachers. In Cunningham v. Franklin Parish School Board, 457 So.2d 184, 188 (La.App. 2 Cir.), writ denied, 461 So.2d 319 (La.1984), a tenured teacher with almost thirty years of service was terminated for willful neglect of duty after she was found guilty of leaving three pre-school handicapped students unattended in her locked classroom and missing her classes without permission. The teacher asserted that she could not be terminated for willful neglect of duty because she had not been warned that such conduct could be the basis for termination. The appellate court upheld the termination, finding that a warning is not required when the teacher should know her conduct is improper. Cunningham, 457 So.2d at 189.
In Summers v. Vermilion Parish School Board, 493 So.2d 1258 (La.App. 3 Cir.), writ denied, 497 So.2d 312 (La.1986), a tenured principal was charged with willful neglect of duty and dishonesty based on his arrest by law enforcement officials for *1229 possession of marijuana with intent to distribute. After a hearing, the School Board terminated the principal. The principal appealed, and the Third Circuit concluded that the conduct of the principal did fall within the category of willful neglect of duty, and was a matter of public policy and common sense. Summers, 493 So.2d at 1265.
In Celestine v. Lafayette Parish School Board, 284 So.2d 650, 651-652 (La.App. 3 Cir.1973), a tenured fifth grade teacher with eleven years experience was told by several students that two girls in his room had been using bad words. He confronted the girls in front of the class, and when they admitted they had used a vulgar word, he ordered each of them to write that word one thousand times and turn the work in to the principal. When the principal received the work, which consisted of the "f" word written one thousand times, he notified the superintendent of school who brought tenure hearing charges against the teacher. At the conclusion of the hearing, the School Board unanimously voted to dismiss the teacher. The teacher argued on appeal that he should not have been terminated because the School Board did not have a policy against requiring students to write words as a method of disciplining them. The appeals court affirmed the termination on the grounds that the teacher's extremely poor judgment in requiring an eleven-year-old to write a very vulgar word many times, particularly in the presence of the other members of the class, supported his termination. Celestine, 284 So.2d at 655.
In Sylvester v. Cancienne, 95-0789 (La.App. 1 Cir. 11/9/95), 664 So.2d 1259, 1260, writ not considered, 95-3128 (La.1/26/96), 666 So.2d 663, a principal with fourteen years of experience used duct tape and rope to restrain a five-year-old behavior disordered kindergarten child in his desk. The school system terminated the principal on the grounds of incompetency and willful neglect of duty. The principal appealed, asserting that the school system did not have a specific policy regarding restraint techniques and prohibiting the use of duct tape and rope on students, thus her conduct could constitute neither incompetence nor willful neglect. This court affirmed the termination, stating the principal, by virtue of her education, experience, and certification, was required to conduct herself according to dictates of professionalism and common sense, even in the absence of a policy prohibiting certain conduct. Sylvester, 95-0789, 664 So.2d at 1264.
In the present case, Ms. Spurlock should have known that the general responsibility and conduct of teachers would include not humiliating children in front of the class. Admittedly, the School Board did not have a specific policy that prohibited a teacher from directing her students to simulate sex acts in the classroom, nor was Ms. Spurlock given a direct order from her supervisor that she should not require second grade students to simulate sex acts in the classroom. Similarly, the School Board did not specifically prohibit second grade teachers from a discussion of boys' penises in the classroom, nor did it specifically prohibit teachers from making statements to misbehaving male students that they hoped their penises would "swell up and break off."
Daisy F. Slan, superintendent for the East Feliciana School System, acknowledged during her testimony that no policy prohibited teachers from disciplining elementary school students by requiring them to simulate sex acts in front of their peers in the classroom. She also testified, however, that the School Board did not have a policy which prohibits teachers from running over a student with their car, from *1230 standing in front of the class naked, or from gambling with students on campus.
Ms. Slan testified that it was impossible for a school system to have a policy that addressed every conceivable conduct by a teacher. Superintendent Slan testified that Ms. Spurlock's actions were not authorized by School Board policy and demonstrated a lack of logic and common sense in the disciplining of young children. Further, she testified there was a policy that parental consent must be obtained before teaching anything of a sexual nature to the students, and further, that in disciplining students, the policy was that the children must always be treated with respect. These policies were obviously contravened by Ms. Spurlock.
We find that the conduct in this case is such that the School Board's decision to terminate Ms. Spurlock's employment was one in which this court should not substitute its judgment for the judgment of the School Board nor interfere with the School Board's bona fide exercise of discretion. See Howard, XXXX-XXXX at p. 7, 793 So.2d at 157.

DECREE
After a thorough review of the record and the jurisprudence, we find that there is substantial evidence to support the conclusions of the School Board. Therefore, the trial court decision affirming the School Board's decision to terminate Ms. Spurlock is affirmed. Costs are assessed against Ms. Spurlock.
AFFIRMED.
NOTES
[1] Ms. Spurlock does not assert that the statutory formalities of the Teacher Tenure Law were not complied with.