| ¡MARION F. EDWARDS, Judge.
Plaintiff/Appellant, David Wartenburg, appeals from a Judicial Review of Adjudication following a hearing by the Board of New Orleans-Baton Rouge Steamship Pilot Examiners for the Mississippi River and subsequent revocation of his pilot’s commission. For the following reasons, the judgment of the trial court is affirmed.
FACTS AND PROCEDURAL HISTORY
On June 25, 2001, appellant, Captain David Wartenburg (‘Wartenburg”) was the pilot of a vessel named The Chios Dream, which was in navigation on the Mississippi River. On that date, Warten-burg was responsible for monitoring the apprenticeship of Andrew Samples, who had yet to complete his state mandated pilot training and had not received his required state commission. Without the proper certification, Samples was not authorized to pilot The Chios Dream unassisted. Before Wartenburg’s relief pilot, Captain Daniel Hoobler, had boarded | ¡¡The Chios Dream, Wartenburg left the vessel, thereby causing Samples to be in charge as pilot.
On March 8,- 2002, the Board of New Orleans-Baton Rouge Steamship Pilot Examiners for the Mississippi River (NO-BRA), charged Wartenburg with neglect of duty and gross violation of Board of Examiners Rules and Regulations. Following an Administrative Hearing on August 19, 2002, the Board made a recommendation to Governor Mike Foster that Warten-burg’s State Pilot Commission be revoked. On September 4, 2002, Governor Foster revoked Wartenburg’s commission, effective immediately.
On September 23, 2002 Wartenburg filed a Petition for Judicial Review of Adjudication in the Twenty-Fourth Judicial District Court for the Parish of Jefferson. After a hearing on May 9, 2003, the trial court affirmed the ruling of the Board of Examiners in an August 12, 2003 judgment. Wartenburg timely filed the present appeal.
LAW AND ANALYSIS
On appeal, Wartenburg raises four assignments of error: 1) The District Court erred in upholding the decision of the Board of Examiners as it was in violation *856 of Constitutional or Statutory provisions; 2) The District Court erred in upholding the decision of the Board of Examiners and Governor which was improper and exceeded the authority of the agency, as the Board lacked the authority to conduct the hearing pursuant to LSA R.S. 34:1042; 3) The District Court erred in upholding the decision of the Board of Examiners and Governor as said decision was arbitrary and capricious and an abuse of discretion, and; 4) The District Court erred in affirming the ruling of the Board of Examiners and Governor, which was excessive and punitive and constituted an arbitrary and capricious abuse of discretion.
14As the Fourth Circuit noted in Administrators of Tulane Educational Fund v. Johnson:[1]
Judicial review of an agency’s decision is a multifaceted function involving several categories: factual review, procedural review, statutory or constitutional review, and substantive review; the manifest error standard of review is used for review of fact-finding by the agency, but conclusions and exercises of agency discretion are subject to the arbitrariness test upon review. Matter of Insulation Technologies, Inc., 95-1184 (La.App. 1 Cir. 2/23/96) 669 So.2d 1343, writ denied, 96-0749 (La.5/3/96) 672 So.2d 692. Where an administrative agency or hearing body is the trier of fact, the court will not review evidence before such body except for the purpose of determining if the hearing was conducted in accordance with authority and formalities of statute, whether the fact-findings of the body were supported by substantial evidence, and whether the body’s conclusions from such findings were arbitrary or constituted abuse of the hearing body’s discretion.
We will first address Warten-burg’s assertion that the Board of Examiners lacked the authority to conduct the hearing pursuant to LSA R.S. 34:1042. On this issue, the trial court held:
This Court finds that the Board of Examiners acted pursuant to 34:1042(B) regarding Wartenburg’s “neglect of duty.”
Wartenburg argues that LAC 46:LXXVT § 111(A) provides that only when a vessel goes aground or collides or meets with casualty or is injured can a 1042(B) Board of Directors investigate or recommend. But the clear intent of 1042(B) is to allow the reporting of “... all (emphasis ours) cases of neglect of duty, habitual drunkenness, and gross violations,” all of which can occur without a collision, etc. It is obvious that the drafters of La. R.S. 34:1042(B) did not intend that a river pilot could never be disciplined unless there was a collision, etc.
La. R.S. 34:1049(A) provides that “The Governor shall appoint ... two electors of the state of Louisiana who, together with the three members of the Board of Examiners for New Orleans and Baton Rouge Steamship Pilots as provided by R.S. 34:1042, shall form the Board of New Orleans and Baton Rouge Steamship Pilot Review for the Mississippi River.” Because the Governor did not appoint two electors, there is no La. R.S. 34:1049 and 1055 Board of Review. But, even without the two appointed electors, the three members of the Board of Examiners would have constituted a quorum of the Board of review, *857 and thus would have been capable of making a decision as a Board. For these reasons, this Court finds that the decision of the Board of Examiners and Governor was proper and did not exceed the authority of the agency.
| rLSA-R.S. 34:1042 provides, in relevant part:
A. The governor shall appoint, by and with the advice and consent of the Senate, three citizens who shall form the Board of Examiners for New Orleans and Baton Rouge Steamship Pilots for the Mississippi River from the port of New Orleans to and including the port of Baton Rouge and intermediate ports. B. The board of examiners shall report immediately to the governor all cases of neglect of duty, habitual drunkenness, and gross violations of its rules. The governor shall, thereupon, refer the same for investigation to the board of examiners, the members of which shall sit as investigators and report their findings to the governor, recommending, if justified, a penalty. Whereupon, the governor may remove, suspend, or reprimand in his discretion.
LSA-R.S. 34:1049 states, in relevant part:
A. The governor shall appoint, by and with the advice and consent of the Senate, two electors of the state of Louisiana who, together with the three members of the Board of Examiners for New Orleans and Baton Rouge Steamship Pilots as provided by R.S. 34:1042, shall form the Board of New Orleans and Baton Rouge Steamship Pilot Review for the Mississippi River (hereinafter referred to as “the board”).
B. The board of review shall:
(1) Formulate rules and regulations pursuant to the Administrative Procedure Act, relative to complaints of misconduct of any pilot, for his carelessness or incompetence in handling a vessel he is piloting, or for soliciting business or other employment for himself or others while on board of any vessel.
(2) Conduct hearings, pursuant to the Administrative Procedure Act, including the right to subpoena documents and witnesses pursuant to R.S. 49:956, and investigate any such complaint made to the board of review.
LSA-R.S. 34:1055 provides, in relevant part:
|fiA. A hearing, pursuant to the Administrative Procedure Act, shall be held by the board of review when any person having cause to complain testifies in a sworn complaint that a New Orleans and Baton Rouge steamship pilot:
(1) Was guilty of misconduct, carelessness, or incompetence in the performance of his duties.
Wartenburg argues that in connection with the authority established in LSA-R.S. 34:1042, the Board of Examiners adopted administrative rules related to investigations which prescribe that investigations should only take place in instances where a vessel is damaged in some way. Specifically, Wartenburg cites to LAC 46:LXXVI § 101, et seq., Section 111, which provides:
A. In any case, where a vessel under pilotage shall go aground, or shall collide with any other object, or shall meet with any casualty, or be injured or damaged in any way, the Board of Examiners shall conduct a preliminary investigation in to the casualty to determine if there are any violations of the law of Board of Examiners rules.
Conversely, the Board argues that LAC 46:LXX, Chapter 61 of the Board of Examiners rules clearly allows investigation under other circumstances as well:
*858 When an investigation uncovers dangerous and/or unsafe condition and/or conditions that may jeopardized (sic) the interests, safety, health, or welfare of the pilots, vessels, cargo, property or individuals, the Commission may make recommendations for the corrective measures.
The Board concludes that that the allegations against Wartenburg, if true, represented an unsafe condition that could have jeopardized the safety of vessels or individuals on the river.
After reviewing the applicable statutes and internal rules, we agree with the trial court’s finding and underlying reasoning that LSA-R.S. 84:1049 and LSA-R.S. 34:1055 would not have provided the authority for the Board of Examiners to conduct an investigation into the allegations of neglect against Wartenburg, as Governor Foster had not appointed the requisite two electors to form the “Board of |7New Orleans and Baton Rouge Steamship Pilot Review for the Mississippi River.” We further agree with the trial court’s finding that the above cited statutes would not have precluded the Board of Examiners from investigating the allegations under LSA-R.S. 34:1042. Accordingly we find that this assignment lacks merit.
Wartenburg next asserts that the actions of the Board of Examiners violate fundamental fairness and Constitutional due process, as the charges against him are not based upon any written rule promulgated by the Board of Examiners. Specifically, Wartenburg insists that there are no rules, administrative code articles, or policies that prohibit the practice of leaving an apprentice pilot in control of a vessel prior to being relieved by another pilot. The Board does not contest the absence of a written rule in this regard at the time of Wartenburg’s actions.
In making his argument, as he did in the lower court, Wartenburg relies on the case of Howard v. West Baton Rouge Parish School Bd.[2] In Howard, a tenured high school teacher sought judicial review of his termination for bringing a gun onto school property. Relying on the Fourth Circuit case of Coleman v. Orleans Parish School Bd.,[3] The Louisiana Supreme Court held that “teachers may be dismissed for willful neglect of duty only for a specific action or failure to act in contravention of a direct order or identifiable school policy.”[4]
In this case, the trial court rejected Wartenburg’s reliance on Howard, noting:
The only guidance provided to this Court regarding this issue is Howard v. W.B.R. School Board, 793 So.2d 153 (La.2001), which this Court finds to be inapplicable. The Court in Howard, a case dealing specifically with the Teacher Tenure Act, found that Howard did not act intentionally or with willful neglect. In the present case, however, Warten-burg admitted that he “intentionally” left the bridge before his relief was present. Therefore, this Court does not find |sHoward to be helpful, and, consequently, must look to LSA-R.S. 34:1042(B), which requires the Board of Examiners to investigate and report to the Governor all allegations of neglect of duty.
This Court finds that the fact there are no written rules does not mean that a NOBRA pilot can willfully neglect his *859 duties. As respondent’s brief states, “there is no specific regulation that prohibits a river pilot from taking a nap while piloting a vessel, but it would be ludicrous to suggest that the Board of Examiners have no recourse against a pilot caught sleeping on duty.”
We agree with the trial court’s assessment that Howard is inapplicable to the present facts, and therefore will pretermit discussion.
Wartenburg next argues under this assignment that the Board of Examiners violated LSA R.S. 49:951, LSA R.S. 49:953, and LSA R.S. 49:954 and has failed to follow the proper procedures for promulgating rules governing “requirements for conduct or action.” The trial court noted however that because “NOBRA had no rules and regulations ... there is no need for NOBRA to comply with LSA R.S. 49:951, 953, and 954. Similarly, the Board argues that procedural rulemaking requirements are inapplicable to the present suit.
LSA-R.S. 49:963 details the process by which a court may determine whether an agency’s particular rule was adopted in substantial compliance with required rule-making procedures, namely in the form of an action for declaratory judgment in the district court of the parish in which the agency is located. In the present case, however, The Board did not have a set of rules in place at the time of Wartenburg’s alleged offense. Even if this had been the case, however, Wartenburg had not challenged what he deems to be a violation of administrative procedure in the manner prescribed by LSA-R.S. 49:963. Accordingly, we find that the trial court did not err in holding LSA R.S. 49:951, 953, and 954 to be inapplicable to the present facts.
In the alternative, Wartenburg also contends that the Board of Examiners improperly relied on expert testimony at his hearing to create a standard of conduct in an effort to avoid and subvert the rulemak-ing process. In essence, Wartenburg | flis challenging the credibility of Crescent River Pilot Douglas Grubbs, who was qualified as an expert by The Board, and who testified that Wartenburg’s act in leaving Samples in control of the vessel unassisted constituted a neglect of his duty. Warten-burg insists that since Grubbs is not a NOBRA pilot, he was not familiar with NOBRA’s rules and regulations regarding pilot exchanges. Wartenburg also claims that Grubb’s testimony regarding proper pilot exchanges was contradicted by that of another expert witness, Paul Kirehner. Wartenburg concludes that in the absence of an established set of rules and regulations, every pilot could be considered as an expert witness, each with his own idea of what the standard should be.
As the trial court noted, however, War-tenburg also called his own witnesses at the hearing, none of which supported War-tenburg’s assertion that his conduct was proper:
Wartenburg called numerous river pilots as witnesses on his behalf, none of which offered testimony favorable to Warten-burg in regards to his possible neglect of duty. Capt. Gagnon testified that he had never left an apprentice alone to conduct a pilot-to-pilot exchange. Capt. Hauswald testified that he would never leave a vessel without making sure that his relief pilot was on board ... This Court finds that the witnesses, Board of Examiners, and Wartenburg himself were all clear on what the appropriate “standard of conduct” should be.
In its decision, the Board of Examiners made numerous findings of fact based upon information from witnesses they believed and did not consider opinions of witnesses they did not believe. For that reason, this Court must give *860 great weight to the very lengthy findings ...
 As the Fourth Circuit noted in Holladay v. Louisiana State Bd. of Medical Examiners:[5]
Considerable latitude must be afforded administrative agencies to perform functions delegated to them under law, and courts should not intervene unless the administrative agencies’ conduct is clearly unreasonable and arbitrary. Montalbano v. Board of Medical Examiners, 560 So.2d 1009 (La.App. 4th Cir.1990); Mayeaux’s Food and Sporting Goods, Inc. v. State of Louisiana, Department of Health and Human Resources, 470 So.2d 469 (La.App. 1st Cir.1985). An administrative agency’s proceedings and decisions are presumed to be legitimate and correct, and the burden is on the appellant to demonstrate the grounds of reversal or modification. Ross v. Stewart, 227 U.S. 530, 33 S.Ct. 345, 57 L.Ed. 626 (1913); Wilcox v. Louisiana State Board of Medical Examiners, 446 So.2d 502 (La.App. 4th Cir.1984) ...
Where the administrative agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency’s determination of credibility issues. La. R.S. 49:964(G).
After a review of the record before us, we agree with the trial court’s finding that The Board did not improperly rely on witness testimony in determining an applicable standard of care in this case.
In his next assignment of error, Wartenburg contends that the District Court erred in upholding the decision of the Board of Examiners and Governor, which he deems to be arbitrary and capricious and an abuse of discretion. As the basis of this assignment, Wartenburg asserts that the proceeding conducted by the Board were characterized by “prejudice and pre-judgment.”
In the District Court, Wartenburg recounted that on October 31, 2001, he sent correspondence to Commissioners and Captains Henry Shows, Jr. and Martin W. Gould, Jr. raising questions about their conduct related to Coast Guard licensure of apprentices, and further seeking their resignation from office. In summary, Wartenburg asserts that “The timing of [his] October 31, 2001 letters challenging the Commissioners to resign, and the institution of these proceedings appear to be quite a bit more than coincidental.” The District Court, however, found no evidence of bias or prejudice stemming from Wartenburg’s October 31, 2001 letter challenging the Board of Examiners to independently investigate charges involving apprentice licensure issues. After our own review of the record, we cannot say that the District Court was erroneous in this regard.
| nWartenburg, citing Matter of Rollins Environmental Services,[6] next argues under this assignment that the three original Commissioners for his hearing, Gould, Shows and Wattigney, had each directly solicited information from witnesses in this matter and therefore had advance knowledge of adjudicative facts that were at issue. As the Board points out, however, Captain Gould and Captain Wattigney completed their terms on the Board prior to the time that this matter was heard. These members were replaced by Captain *861 Shirah[7] and Captain Daniels. The court found in regard to the third member of the Board, Captain Henry Shows:
When Shows was questioned prior to the hearing, he admitted that he had participated in a discussion with Samples and the two previous members of the Board of Examiners. At that time, Shows also admitted that he had a close relationship with Wartenburg, but said he felt that neither of these things would hinder his ability to be fair. In fact, La. R.S. 34:1042(B) requires that the Board of Examiners make an inquiry to determine if there is sufficient reason to recommend to the Governor that an investigation should be held. This is exactly what Shows and the two previous Examiners were doing when the three of them questioned Samples very briefly. For this reason, this Court finds that Shows’ prior knowledge of adjudicative facts in no way prejudiced Wartenburg in his right to a fair hearing.
In reviewing the applicable portion of the record, we agree with the trial court that the Board Members presiding over Wartenburg’s hearing did not exhibit an inability to conduct a fair hearing. Accordingly, we find this assignment to be without merit.
In his final assignment of error, Wartenburg contends that the ruling of the Board of Examiners and Governor revoking his commission was excessive and punitive and constituted an arbitrary and capricious abuse of discretion.
| ^Following a detailed section in which they outlined their findings of fact, The Board stated reasons why they felt War-tenburg’s actions were such a serious offense:
Wartenburg’s actions and statements give great concern to this Board ... Wartenburg’s. actions were in reckless, disregard for the safety of Louisiana people and property. His actions were a conscious violation of the people’s rights to safety on the river. This is gross negligence.
The trial court, in its own review, noted the following:
The obligation of the Board- of Examiners is to protect the safety, health and welfare of persons and property. When reviewed as a whole, Wartenburg’s testimony makes clear that he does not comprehend that danger of his failure to be on the bridge for a period of time and his failure to be sure that a replacement pilot was on the vessel. In announcing the decision of the Board of Examiners, Capt. Daniels clearly stated “... the most disturbing part of this is that in my heart I really have to believe from everything that’s been said that if you were on the same ship tomorrow in the same circumstances, you would do the same thing.” (speaking of Wartenburg). There was no remorse nor was there any understanding ' by Wartenburg of the danger involved. Even though a catastrophe did not occur, the possibility was there ... There was a possibility of a real disaster whereby person or property could have been harmed. With the safety of persons and property at stake, this Court finds that the Board of Examiners’ decision was not arbitrary and capricious and the punishment was not excessive and punitive.
In making his argument under this assignment, Wartenburg insists that the *862 Board in other cases has imposed less harsh punishments for arguably more serious offenses.[8] Wartenburg also insists that the penalty imposed is not commensurate with his offense as The Chios Dream did not run aground, was not involved in a casualty or collision, and no injury or damage to the vessel occurred.
In our review of the decision to revoke Wartenburg’s commission, we are guided by Jones v. New Orleans Fire Dept.:[9]
|13A reviewing court must decide whether the appointing authority had good or lawful cause for taking the disciplinary action and whether the punishment imposed is commensurate with the offense. Staehle [v. Department of Police, 98-00216] at p. 3[(La.App 4 Cir. 11/18/98)], 723 So.2d [1031] at 1033. In determining whether the Commission’s exercise of its discretion in determining whether disciplinary action is based on legal cause, and the punishment is commensurate with the infraction, the reviewing court may not modify the Commission’s order unless it is shown to be arbitrary, capricious or characterized by an abuse of discretion. Bannister [v. Department of Streets, 95-0404], at p. 8 [(La.1/16/96)], 666 So.2d [641] at 647.
In reviewing the record before us, we cannot say the Board and the Governor abused their discretion in revoking War-tenburg’s commission, although it does appear from a review of the record that a disparity exists in the reprimands meted out by the Board for violations arguably similar to or more severe than those charged in the present case. We do agree with the trial court’s observation, however, that in light of the valid concern for the safety of persons and property, the Board of Examiners should stand.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.

. 2000-0297 (La.App. 4 Cir. 4/4/01), 784 So.2d 769; writ denied, 2001-1757 (La. 10/5/01), 798 So.2d 970.

. 2000-3234 (La.6/29/01), 793 So.2d 153.

. 93-0916, 94-0737 (La.App. 4 Cir. 2/5/97); 688 So.2d 1312, writ denied, 97-0622 (La.4/25/97), 692 So.2d 1087.

. Howard, supra, at 156.

. 96-1740 La.App. 4 Cir. 2/19/97, 689 So.2d 718; writ denied, 97-0730 (La.5/1/97), 693 So.2d 740.

. 481 So.2d 113, (La.1985).

. The District Court noted in regard to Capt. Shirah: "The facts further indicate that Capt. Shirah and Samples, at some point in time, were married to women who were first cousins. Capt. Shirah indicated that he had no social or other close bonds with Capt. Samples and that he was absolutely certain that he could be fair to Capt. Wartenburg.

. Specifically, Wartenburg describes the case of a pilot who was suspended for one year after testing positive for cocaine.

. 2000-1047 (La.App. 4 Cir. 3/14/01), 785 So.2d 866.